# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **TROY T. WILLIAMS,**         ) | |
|             ) | |
|     **Plaintiff,**      ) | |
|             ) | |
| **vs.**                 ) | **Civil Action No. 5:17-CV-01216-CLS** |
|             ) | |
| **CAPITAL ONE BANK (USA),**  ) | |
| **N.A., and EQUIFAX**  ) | |
| **INFORMATION SERVICES,**  ) | |
| **INC.,**               ) | |
|             ) | |
|     **Defendants.**    ) | |

## MEMORANDUM OPINION

Plaintiff, Troy Williams, who is proceeding *pro se*, filed a Second Amended Complaint on October 17, 2017, asserting a claim against defendant, Capital One Bank (USA), N.A. ("Capital One"), for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").[1] The case currently is before the court on Capital One's motion to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] Upon consideration of the motion and

---

[1] Doc. no. 57 (Second Amended Complaint). The Second Amended Complaint also asserted an FCRA claim against defendant Equifax Information Services, Inc. ("Equifax"), as well as state law claims for invasion of privacy; negligent, wanton and/or intentional hiring and supervision; and, publishing false and defamatory information. *See id.* None of plaintiff's claims against Equifax are addressed in this opinion.

[2] Doc. no. 68 (Defendant Capital One's Motion to Dismiss Second Amended Complaint).

plaintiff's response thereto,[3] the court concludes that the motion should be granted.

## I. STANDARDS OF REVIEW

**A.**    **Rule 12(b)(1)** — *Dismissal for Lack Of Subject Matter Jurisdiction*

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)).

A motion to dismiss a case for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).[4] When ruling upon a Rule 12(b)(1) motion asserting a lack of jurisdiction on the face of the plaintiff's complaint, the court must consider the allegations of the complaint as true. *See Williamson v.*

---

[3] Doc. no. 72 (Plaintiff's Response to Capital One's Motion to Dismiss).

[4] Rule 12(b)(1) provides that "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . . ." Fed. R. Civ. P. 12(b)(1).

*Tucker,* 645 F.2d 404, 412 (5th Cir. 1981) (citations omitted).[5]  On the other hand, "a 'factual attack' on subject matter jurisdiction 'challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Douglas v. United States*, 814 F.3d 1268, 1278 (11th Cir. 2016) (quoting *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1311-12 (11th Cir. 2009), *abrogated on other grounds by Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)) (alteration in original).

**B**.　　**Rule 12(b)(6)** — *Dismissal for Failure To State A Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

(citations omitted).[6]

---

[6] The Supreme Court elaborated the requirement that a complaint contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when observing that:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can

Furthermore, whenever matters other than the pleadings are presented to, but not excluded by the district court when ruling upon a defendant's Rule 12(b)(6) motion to dismiss a compliant for failing to state a claim upon which relief can be granted, the motion normally "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (alterations supplied). In other words, "[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (alteration supplied).

Even so, there are narrow exceptions to that general proposition. Indeed, the Eleventh Circuit has held that a district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) *undisputed*." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (emphasis supplied). The term "undisputed" is defined as meaning that "the authenticity of the document is not challenged." *Id.*

---

provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alterations supplied).

Here, the only documents outside the allegations of plaintiff's Second Amended Complaint that have been considered by this court are documents from other court cases, and the authenticity of those documents cannot be disputed. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."); *United States v. Rey*, 811 F.2d 1453, 1457 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."). Moreover, the other court documents are central to plaintiff's FCRA claim against Capital One, because that claim concerns whether a judgment entered in state court was fairly reported.

## II. RELEVANT FACTS

### A. Prior State Court Proceedings

Plaintiff's FCRA claim is based upon a state-court judgment that Capital One obtained against him in the District Court of Madison County, Alabama, on December 20, 2010 — now, more than seven years ago. The Alabama Court of Civil Appeals described the circumstances leading to that judgment and its subsequent disposition in *Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4 (Ala. Civ. App. 2015), as follows:

> On December 20, 2010, Capital One filed a complaint against

Williams in the district court, asserting that Williams owed $4,078.83 on an account stated between Capital One and Williams. On January 18, 2011, Capital One sought a default judgment against Williams for failure to answer or otherwise defend against the complaint. On January 21, 2011, the district court entered a default judgment in favor of Capital One in the amount of $4,078.83, plus court costs and postjudgment interest.

On September 14, 2011, Williams filed in the district court an "affidavit of status as secured party and creditor" in which he declared himself a member of the "Sovereign People of the Free Republic of Alabama" and sought the withdrawal of any "adverse information" from his credit records and relief from the default judgment. On October 11, 2011, Williams filed in the district court a motion to dismiss, in which he stated, among other things, that "[t]his notice is a trespass in admiralty." Williams also filed in the district court a "common law copyright notice," purporting to reserve rights regarding the copyright and trademark of his name. On November 9, 2011, the district court denied Williams's motion requesting that the case be dismissed.

On September 16, 2013, Williams filed in the district court an independent action seeking to set aside the default judgment. In the pleading initiating the action, Williams asserted, among other things, that Capital One and Holloway [*i.e.*, defendant Holloway & Moxley, L.L.P., Capital One's collection agency] had committed fraud upon the court. Williams also asserted in his pleading, based on his assertion of fraud upon the court, various claims against Capital One and Holloway, and he sought damages in the amount of $128,000,000. On September 23, 2013, the district court entered an order that stated: "The Court having lost jurisdiction in this matter, [Williams's] MOTION TO SET ASIDE is hereby DENIED." On October 3, 2013, Williams filed a "motion to reconsider — motion to amend complaint." In that postjudgment motion, Williams purported to amend his claims against Capital One and Holloway, asserting fraud upon the court, to reduce the requested amount of damages to $2,900, so that his claims would remain within the district court's jurisdiction. *See* Ala. Code 1975, § 12-12-31(a) (providing that the district court has exclusive jurisdiction over all

civil actions in which the matter in controversy does not exceed $3,000). As argued by Capital One on appeal, Williams's October 3, 2013, postjudgment motion was denied by operation of law on October 17, 2013, pursuant to Rule 59.1(dc), Ala. R. Civ. P. On October 22, 2013, Williams filed a document titled "addendum — motion to amend complaint," again seeking to set aside the default judgment based upon fraud upon the court and, for the first time, citing Rule 60(b), Ala. R. Civ. P. That motion was a successive postjudgment motion, however, seeking substantially the same relief as Williams's October 3, 2013, motion; thus, that motion did not toll the time for taking an appeal. *See Green v. Green*, 43 So.3d 1242, 1243-44 (Ala. Civ. App. 2009). On November 1, 2013, the district court entered an order purporting to deny Williams's "motion to reconsider"; however, that order was a nullity because the motion had already been denied by operation of law on October 17, 2013. *See Moragne v. Moragne*, 888 So.2d 1280, 1282 (Ala. Civ. App. 2004); and Rule 59.1(dc).

Williams filed an appeal to the circuit court on November 12, 2013. Capital One and Holloway filed a motion to dismiss the appeal on the basis that the appeal had been untimely filed. On February 3, 2014, the circuit court entered an order granting the motion to dismiss. Williams filed a postjudgment motion on February 28, 2014; that motion was denied by the circuit court on April 10, 2014. Additionally, in the circuit court's April 10, 2014, order denying Williams's postjudgment motion, the circuit court awarded attorney's fees in the amount of $1,112.50 as a sanction against Williams, as requested by Capital One and Holloway. Williams filed his notice of appeal to this court on May 15, 2014.

Capital One argues on appeal that the circuit court lacked jurisdiction and, therefore, that it properly dismissed Williams's appeal from the district court. This court outlined the appropriate standard of review in *M.E.W. v. J.W.*, 142 So. 3d 1168, 1171 (Ala. Civ. App. 2013):

> "'The timely filing of a notice of appeal is a jurisdictional act.' *Rudd v. Rudd*, 467 So. 2d 964, 965 (Ala. Civ. App. 1985); *see also* Committee Comments to Rule 3, Ala. R.

App. P. The question whether the mother's appeal was timely and, thus, whether the circuit court acquired subject-matter jurisdiction over the mother's appeal is a question of law; thus, we review de novo the dismissal of the mother's appeal by the circuit court. *See Banks v. Estate of Woodall*, 129 So. 3d 294 (Ala. Civ. App. 2013); *see also Ex parte Terry*, 957 So. 2d 455 (Ala. 2006) (stating that a claim that a court lacks subject-matter jurisdiction presents a question of law, which an appellate court reviews de novo)."

As discussed above, Williams's October 3, 2013, postjudgment motion was denied by operation of law on October 17, 2013. "A notice of appeal from a judgment of a district court must be filed 'within 14 days from the date of the judgment or the denial of a posttrial motion, whichever is later.' Ala.Code 1975, § 12–12–70(a)." *McCaskill v. McCaskill*, 111 So. 3d 736, 737 (Ala. Civ. App. 2012). Williams filed his notice of appeal to the circuit court on November 12, 2013, well over 14 days following the denial by operation of law of his October 3, 2013, postjudgment motion. Thus, that notice of appeal was untimely, and the circuit court never acquired jurisdiction over Williams's appeal. *See Ryans v. State ex rel. Stoudmire*, 963 So. 2d 95, 96 (Ala. Civ. App. 2007). Although the circuit court properly dismissed Williams's appeal, Williams proceeded to file a postjudgment motion from that dismissal, and the circuit court purported to deny that postjudgment motion and to award attorney's fees as a sanction against Williams. Because the circuit court never obtained jurisdiction over Williams's appeal, however, it lacked jurisdiction to entertain any further motions or pleadings. *See Maclin v. Congo*, 106 So. 3d 405, 408 (Ala. Civ. App. 2012). Thus, the circuit court's April 10, 2014, order is void. *Id*.

Based on the foregoing, we affirm the circuit court's judgment dismissing Williams's action for lack of subject-matter jurisdiction, albeit with instructions to the circuit court to vacate its April 10, 2014, void order.

*Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4, 5-6 (Ala. Civ. App. 2015)

(second alteration supplied, other alterations in original).

## B.  Prior Proceedings in Federal Court

Williams filed his first complaint in the United States District Court for the Northern District of Alabama on August 1, 2013, while the state-court proceedings described above still were pending.

His first federal court complaint was assigned to Senior United States District Judge Inge Prytz Johnson as Civil Action No. 5:13-cv-1431-IPJ, and asserted that Capital One had "gone above & beyond all bounds of law & reasonableness by bringing suit against [him] when no valid contract was presented to the court."[7] According to Williams, Capital One's "reckless" behavior caused him to be denied housing and job opportunities, defamed his character, and deprived him of his liberty interests in violation of the Fifth Amendment to the United States Constitution.[8]

Judge Johnson entered an order denying Williams's motion for leave to proceed *in forma pauperis*, and, dismissing his claims without prejudice on August 7, 2013.  Judge Johnson concluded that the pleadings before her did not establish jurisdiction on the basis of the parties' diversity of citizenship, and that Williams's

---

[7] Doc. no. 1 (Complaint in Civil Action No. 5:13-cv-1431-IPJ), at 2 (alteration supplied). Williams's complaint also included a claim against the State of Alabama, but the State never responded to the complaint, and the claims against the State were dismissed when Williams's other claims were dismissed.

[8] *Id.* at 2-3.

reliance upon Federal Rule of Civil Procedure 60(b) did not create any independent grounds for jurisdiction.[9] Williams filed a "Motion to Reconsider – Motion to Amend Complaint" on August 19, 2013, requesting leave to amend his complaint to remove the reference to Rule 60(b) and to plead the existence of diversity jurisdiction.[10] Judge Johnson denied that motion without further comment on August 22, 2013.[11]

Williams commenced a second action against Capital One in this court on November 7, 2014, and asserted claims for violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*[12] That case was assigned to United States District Judge Madeline Hughes Haikala as Civil Action No. 5:14-cv-2173-MHH. Judge Haikala entered an order that identified pleading deficiencies in Williams's complaint

---

[9] *See* doc. no. 3 (Order of Dismissal) in Civil Action No. 5:13-cv-1431-IPJ, at 1-2.

[10] Doc. no. 4 in Civil Action No. 5:13-cv-1431-IPJ.

[11] Doc. no. 5 in Civil Action No. 5:13-cv-1431-IPJ.

[12] Doc. no. 1 (Complaint) in Civil Action No. 5:14-cv-2173-MHH. The complaint also mentioned "Regulation AA (Unfair or Deceptive Acts or Practices)," but that regulation has been repealed, and plaintiff did not actually assert a cause of action under the regulation. Williams's original complaint also asserted claims against an entity called "Holloway & Moxley LLP," who plaintiff identified as a debt collector, but Williams omitted those claims from his Amended Complaint. *See id.* at ECF 2; doc. no. 7 (Amended Complaint), in Civil Action No. 5:14-cv-2173-MHH. The original complaint also included claims against an entity called "Capital One Management System," but plaintiff later abandoned those claims. *See* doc. no. 1 (Complaint) in Civil Action No. 5:14-cv-2173-MHH; doc. no. 23 (Motion to Withdraw Claims) in Civil Action No. 5:14-cv-2173-MHH; doc. no. 25 (Order Dismissing Claims Against Capital One Management System) in Civil Action No. 5:14-cv-2173-MHH.

on January 22, 2015, and instructed him on the manner of filing an amended complaint that would correct those deficiencies.[13] Williams filed an amended complaint on February 9, 2015, asserting the same claims as the original complaint.[14]

Capital One moved to dismiss Williams's amended complaint,[15] and Judge Haikala entered an order on May 1, 2015, that partially granted the motion to dismiss (*i.e.*, dismissing all claims except Williams's TCPA claim), and directing plaintiff to file a Second Amended Complaint containing specific factual allegations to support the remaining TCPA claim.[16]

Before Williams filed a Second Amended Complaint, however, the case was transferred to the United States District Court for the Northern District of Illinois as part of a multi-district litigation (MDL) court.[17] From what can be discerned from the current record, it appears that the MDL proceedings were resolved in favor of Capital One.[18]

## C. Allegations Against Capital One in the Instant Case

---

[13] Doc. no. 6 (Order) in Civil Action No. 5:14-cv-2173-MHH.

[14] Doc. no. 7 (Amended Complaint) in Civil Action No. 5:14-cv-2173-MHH.

[15] Doc. no. 14 (Motion to Dismiss) in Civil Action No. 5:14-cv-2173-MHH.

[16] Doc. no. 20 (Order) in Civil Action No. 5:14-cv-2173-MHH.

[17] *See* doc. no. 30 (Transfer Order) in Civil Action No. 5:14-cv-2173-MHH.

[18] Doc. no. 1 (Complaint), at ¶ 34.

In the present case, the third that has been filed in this court, Williams asserts that Capital One intentionally, maliciously, and knowingly reported false or inaccurate information to Equifax and other Credit Reporting Agencies, despite the fact that Williams had disputed both the amount of the alleged debt and the existence of any agreement obligating himself to pay a debt to Capital One.[19] Although Williams did not explicitly make this connection in his complaint, the court presumes the disputed debt to which Williams refers is the $4,078.83 default judgment entered in favor of Capital One by the District Court of Madison County, Alabama, on January 21, 2011. Williams claims that the alleged debt actually was "charged off in or around 2008 for approximately $2,300," and that Capital One reported the debt to Equifax and other credit reporting agencies without providing a copy of the "signed effective cardholder agreement" memorializing the beginning of Williams's business relationship with Capital One in 2004.[20]

Williams also alleges that Capital One "failed to conduct a proper investigation" into his disputes, and failed to inform Equifax that the account was in dispute.[21] The alleged debt apparently still remains on Williams's Equifax credit

---

[19] Doc. no. 57 (Second Amended Complaint), at ¶¶ 20-21.

[20] *Id.* at ¶¶ 30-31.

[21] *Id.* at ¶ 22. *See also id.* at ¶ 23 ("Capital One Bank, a furnisher, failed to review all relevant information provided with the dispute[s] by consumer Williams forwarded by Equifax.") (alteration in original), ¶ 25 ("Capital One Bank, a furnisher, failed to report the results of the re-investigation to Equifax."), ¶ 36 ("Capital One violated 15 U.S.C. § 1681s-2(b)(1)(D) that requires

report,[22] and he has been "denied gainful employment and/or looked upon in an unfavorable light by Governmental Employer and Employer[s]" as a result.[23] In addition, he allegedly has suffered damages "in the form of an emotional application, mental anguish, anger, anxiety, depression, headaches, worry, frustration, sleep deprivation, stomach problems, humiliation, amongst other negative emotions; as well as lost [*sic*] of enjoyment of life."[24]

Plaintiff asserts that he is a "consumer" as defined by the FCRA.[25] He claims that Capital One violated Section 1681s-2(b) of that Act, which is entitled "Duties of furnishers of information upon notice of dispute,"[26] and states, in pertinent part, that:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any

---

'if the investigation finds that the information is incomplete or inaccurate,' the furnisher must 'report those results to **all other consumer reporting agencies** to which the person furnished the information and that compile and maintain files on consumers **on a nationwide basis**.'" (emphasis in original), ¶ 37 ("Capital One Bank failed to conduct a reasonable investigation upon notice of dispute letter submitted by consumer, Williams, concerning a 're-investigation' forwarded by Equifax.")

[22] The other credit reporting agencies, Experian and TransUnion, deleted the alleged debt from plaintiff's credit report because they were unable to verify that Williams had entered into a signed agreement with Capital One. *Id.* at ¶ 9.

[23] *Id.* at ¶ 19 (alteration in original); *see also* doc. no. 57 (Second Amended Complaint), at ¶ 38 ("**Defendant, Capital One Bank failure** [*sic*] **to conduct a proper and reasonable investigation continued to furnish the false and inaccurate information to willfully, intentionally and maliciously injure Plaintiff's credit worthiness.**") (emphasis in original).

[24] *Id.* at ¶ 73.

[25] *Id.* at ¶ 81; *see* 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.").

[26] The overall title for § 1681s-2 is "Responsibilities of furnishers of information to consumer reporting agencies." 15 U.S.C. § 1681s-2.

information provided by a person to a consumer reporting agency, the person shall —

      (A) conduct an investigation with respect to the disputed information;

      (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

      (C) report the results of the investigation to the consumer reporting agency;

      (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

      (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly —

          (i)     modify that item of information;

          (ii)    delete that item of information; or

          (iii)   permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

## III. DISCUSSION

Capital One asserts that the FCRA claims asserted in Williams's Second

Amended Complaint are barred by the so-called "*Rooker-Feldman* doctrine," and that

he accordingly failed to state a viable claim upon which relief can be granted.

## A.    The *Rooker-Feldman* Doctrine

As the Eleventh Circuit observed in *Alvarez v. Attorney General for Florida*,

679 F.3d 1257 (11th Cir. 2012), the *Rooker-Feldman* doctrine is based upon the

Supreme Court's opinions in

> *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). *The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments. Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009). This is because "[28 U.S.C.] § 1257, as long interpreted, vests authority to review a state court judgment solely in th[e Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The Supreme Court recently has cautioned that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: *cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.*" *Id.* at 284, 125 S. Ct. 1517; *see also Lance v. Dennis*, 546 U.S. 459, 464, 126 S. Ct. 1198, 163 L. Ed.2d 1059 (2006) (*per curiam*) (noting the "narrowness" of the *Rooker-Feldman* rule). We have since explained that the *Rooker-Feldman* doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was "inextricably intertwined" with the state court judgment so that (1) the success of the federal claim would "effectively nullify" the state court judgment, or that (2) the federal claim would succeed "only to the extent that the state court wrongly decided the issues." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (*per curiam*) (internal quotation marks omitted).

*Alvarez*, 679 F.3d at 1262-63 (emphasis supplied, alterations in original).

Capital One asserts that Williams's FCRA claim in this case is inextricably intertwined with the state-court judgment entered against him in 2011, because the claim is "based on a contention that [Williams] does not owe the state court judgment."[27] Capital One supports that argument with citation to two unpublished federal district court decisions: *Franklin v. Dean*, No. 2:11-CV-683-WKW, 2013 WL 1867105 (M.D. Ala. May 3, 2013); and *Graham v. Tasa Group, Inc.*, No. 2:13-CV-00748-LSC, 2015 WL 875228 (N.D. Ala. Mar. 2, 2015).

In the case filed in the Middle District of Alabama, the *pro se* plaintiff named Nue Cheer Franklin allegedly owed a debt of $141.16 to the Alabama State Employees Credit Union ("ASECU"). *Franklin*, 2013 WL 1867105, at *1. The ASECU obtained a default judgment against Franklin in state court, and Richard C. Dean, Jr., the attorney for ASECU, attempted to collect the judgment. *Id.* at *1-2. Franklin sued Dean in federal district court, alleging that he committed multiple violations of the Fair Debt Collection Practices Act, and two of those claims proceeded to trial. *Id.* at *4. First, Franklin alleged that Dean violated 15 U.S.C. § 1692g(a), which requires debt collectors to send written notice of the debt to the consumer within five days of initial contact with the consumer. *Id.* at *5. Franklin

---

[27] Doc. no. 68 (Defendant's Motion to Dismiss Second Amended Complaint), at 9 (alteration supplied).

also asserted that Dean violated 15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* at *5-6. The court noted that, in order to prevail on either of her Fair Debt Collection Practices Act claims, Franklin would need to demonstrate that there was a "debt," which the Act defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* at *6; 15 U.S.C.A. § 1692a(5). The district court found that Franklin's first FDCPA claim was barred by the statute of limitations, and the second failed on the merits. *Franklin*, 2013 WL 1867105, at *9. Franklin argued that, because she had denied owing the underlying debt, *any* collection efforts by Dean violated the FDCPA. But the court held that it could not consider that argument, stating: "*To the extent that Ms. Franklin asks this court to undo the state district court's default judgment against her and to decide whether she owed the underlying debt*, the court lacks subject matter jurisdiction to do so under the *Rooker-Feldman* doctrine." *Id.* at *8 (emphasis supplied). In finding that Franklin was "a state-court loser by way of a state-court judgment," the court clarified that "a default judgment counts for purposes of *Rooker-Feldman*." *Id.* (citing *Jones*

18

*v. Commonwealth Land Title Insurance Co.*, 459 F. App'x 808, 810 (11th Cir. 2012);

*MSK EyEs Ltd. v. Wells Fargo Bank, National Ass'n*, 546 F.3d 533, 539 (8th Cir.

2008)).  The court also found that the state court default judgment was inextricably

intertwined with Franklin's argument in her federal case because "[i]n attacking the

validity of the underlying debt in this lawsuit, Ms. Franklin essentially asks this court

to review the state-court judgment and give her relief denied in the state court." *Id.*

at *9.

Additionally, in the second case filed in this court as *Graham v. Tasa Group,*

*Inc.*, No. 2:13-CV-00748-LSC, 2015 WL 875228 (N.D. Ala. Mar. 2, 2015), the

plaintiff, Roderick Graham, allegedly owed a debt to Tasa Group, Inc., and that

defendant had obtained a default judgment against Graham in state court. *Id.* at *1-2.

Graham filed a federal lawsuit against Tasa Group and three individuals who had

acted as the group's agents for violating the FDCPA and the Racketeer Influenced

and Corrupt Organizations Act,18 U.S.C. § 1961 *et seq*. ("RICO"), and also alleging

state law claims for fraud, theft of property, and negligent and wanton hiring,

training, supervision and retention. *Id.* at *1.  Specifically, Graham alleged that:

> (1) Tasa Group fraudulently entered into an agreement . . . ; (2) Tasa
> Group engaged in theft when it took money from him without providing
> what he believes he was entitled to in return . . . ; (3) *Tasa Group*
> *violated the FDCPA by attempting to collect on a debt that is not*
> *properly owed* . . . ; and (4) Tasa Group violated the RICO statute by

engaging in a scheme to fraudulently enter into an agreement relating to expert witness services and engaging in a scheme to collect money not lawfully owed . . . .

*Id.* at *9 (emphasis and ellipses supplied). United States District Judge L. Scott Coogler held that the *Rooker-Feldman* doctrine barred all of those claims. *Id.* at *7. The bases for his judgment were as follows.

First, Graham was a "state court loser" because of the default judgment entered against him. *Id.* ("The default judgment taken against Graham counts for purposes of *Rooker-Feldman*.") (citing *MSK EyEs Ltd.*, 546 F.3d at 539; *Ballyhighlands, Ltd. v. Bruns*, 182 F.3d 898, *2 (2nd Cir. 1999); *Jones*, 459 F. App'x at 810).

In addition, Judge Coogler found that

Graham's federal RICO and FDCPA claims are "inextricably intertwined" with the judgment entered by the Pennsylvania court, *i.e.*, that Graham owes Tasa Group the underlying debt, in the sense that they are premised on the state court having ruled erroneously. In other words, this Court can not decide in Graham's favor on these federal claims unless it decides that the Pennsylvania court erred in its judgment. Moreover, if the Pennsylvania court had not ruled against Graham, the portion of Graham's RICO and FDCPA claims premised on Tasa Group's attempts to collect the debt based on the default judgment would cease to exist. Thus, again, the only way this Court could find that these attempts to collect the debt could have injured Graham is by finding that the state court ruled erroneously. As such, this Court is without subject matter jurisdiction to entertain Graham's two federal claims. *See Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th Cir. 2013) (in case where apartment complex brought an unlawful detainer action and won a judgment of possession against plaintiff in state court and plaintiff then brought FDCPA claims in federal court,

affirming district court's dismissal of plaintiff's FDCPA claims on *Rooker-Feldman* grounds because ruling in plaintiff's favor on any of those claims would necessitate a finding that the state court's decision was erroneous); *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1316-27 (S.D. Fla. 2011) (dismissing a RICO claim under *Rooker-Feldman*, where plaintiff sought to attack a state foreclosure judgment, because the RICO claims were inextricably intertwined with that foreclosure judgment), *affirmed* 477 F. App'x 558 (11th Cir. 2012).

*Graham,* 2015 WL 875228, at *10.

While the *Franklin* and *Graham* decisions establish that the default judgment entered against the plaintiff in the present action can be considered a prior state court judgment for purposes of the *Rooker-Feldman* doctrine, they do *not* lead to the conclusion that the *Rooker-Feldman* doctrine bars *all* claims in federal court for violation of the Fair Dept Collection Practices Act or Fair Credit Reporting Act that are based upon the collection or reporting of an underlying state court. Instead, the distinction to be made is

between FDCPA claims seeking to overturn state court judgments and FDCPA claims seeking to hold defendants liable for violations of the statute occurring during collection efforts preceding any judgment. *See, e.g., Solis v. Client Servs., Inc.*, No. 11-23798-Civ, 2013 WL 28377, at *4 (S.D. Fla. Jan. 2, 2013) ("Thus, even where a debtor has incurred a valid debt that a creditor is entitled to collect, a debt collector may violate the FDCPA if its methods in attempting to collect the debt do not comply with the requirements of the FDCPA. Such a violation may occur despite the validity of the debt and in no way is dependent upon the legitimacy of the debt."); *Drew v. Rivera*, No. 1:12-cv-9-MP-GRJ, 2012 WL 4088943, at *3 (N.D. Fla. Aug. 6, 2012), *adopted by*, *Drew v. Rivera*, No. 1:12-cv-9-MP-GRJ, 2012 WL 4088871, at *1 (N.D. Fla.

Sept. 27, 2012) ("The fact that a state court judgment was entered recognizing the credit card debt is not mutually exclusive to claims that a debt collector violated the FDCPA in seeking to collect on the indebtedness or violated the FDCPA in attempting to collect on the state court judgment that was entered. Thus, the Court would not be overturning the state court's judgment, which concluded that the debt was enforceable, if it were to find Defendant liable for unfair debt collection practices."). In other words, if an "allegation is premised on [d]efendants' conduct and practices in collecting the debt, [and] not the validation or legitimacy of the debt itself, it is not precluded by the *Rooker-Feldman* doctrine." *Solis*, 2013 WL 28377, at *5; *see also Velardo v. Fremont Inv. & Loan*, 298 Fed. Appx. 890, 892 (11th Cir. 2008) ("[T]he court focuses on the federal claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff." (citation omitted)).

This approach is consistent with the law in other circuits. *See, e.g., Snyder v. Daniel N. Gordon*, *P.C.*, No. C11-1379 RAJ, 2012 WL 3643673, at *8 (W.D. Wash. Aug. 24, 2012) ("[Plaintiff] does not ask this court to invalidate or reject the [state] court's action. She does not deny that she owes American Express a debt, as the [state] court ruled she does. She does not complain of any injury she suffered because of the [state] court's judgment against her. She instead complains of the steps Defendants took in their attempts to collect the debt. The court therefore holds that the [state] court judgment against [Plaintiff] does not preclude her from bringing the claims she made in this case."); *Bradshaw v. Hilco Receivables*, LLC, 765 F. Supp. 2d 719, 727 n. 7 (D. Md. 2011) ("In the present case, the *Rooker-Feldman* doctrine is not implicated — Plaintiffs are not attempting to appeal unfavorable state court decisions, and this Court's holdings will not disturb any underlying state actions. . . . [R]egardless of the legality of any state court collection lawsuits filed by [the defendant], the individual plaintiffs are entitled to damages as a result of [the defendant's] failure to obtain a license under Maryland and federal law."); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006) ("Plaintiffs' alleged injuries here are not the result of the state court judgments themselves, but rather from the allegedly illegal practices

Defendants used to obtain those state court judgments. Plaintiffs' claims arose prior to the various entries of default judgment in state court, and . . . they are separate and distinct from those judgments." (citation omitted)).

*Collins v. Erin Capital Management, LLC*, 991 F. Supp. 2d 1195, 1203-04 (S.D. Fla. 2013). *See also Rumbough v. MidFirst Bank*, No. 607CV1352ORL22DAB, 2008 WL 11336713, at *3 (M.D. Fla. Feb. 4, 2008) (holding that, while *Rooker-Feldman* would bar the federal plaintiff's request for an injunction to prevent a state foreclosure sale, it would not bar a claim that a creditor violated the FCRA by repeatedly and willfully issuing false consumer credit reports concerning the plaintiff, and by failing to investigate the plaintiff's disputes regarding the debt).

Without question, the plaintiff in the present action has stated his belief that the default judgment entered against him in state court is meritless.[28] Even so, his actual claim against Capital One is based upon Capital One's alleged failures to conduct an appropriate re-investigation of his claim, and to appropriately report the results of the

---

[28] *See* doc. no. 57 (Second Amended Complaint), at ¶ 20 ("Capital One Bank willfully, intentionally, maliciously, and knowingly reported false or inaccurate information to Equifax and other CRA's . . . ."), ¶ 21 ("The inaccuracies include, but are not limited to, the 'amount' of the alleged debt reported and lack of signed effective agreement copyrighted 2004."), ¶ 31 ("Defendant Capital One Bank reported to the credit reporting agencies, like Equifax, Experian, and TransUnion $4,078.83, an inaccurate amount owed without providing signed effective cardholder agreement copyrighted 2004."), ¶ 38 ("Defendant, Capital One Bank . . . continued to furnish the false and inaccurate information . . . ."), ¶ 45 ("Capital One Bank was provided with more than sufficient information in the dispute and in their own internal sources of information to conduct an investigation and to conclude that the account complained of was factually inaccurate, incomplete or could not be verified."), ¶ 64 ("Defendant Capital One failed to refrain from continuing to submit information that it knows (or should know) is incorrect.").

re-investigation to consumer reporting agencies. That claim challenges Capital One's actions and inactions with regard to the *reporting* of Williams's debt, but it does not challenge the validity of the debt itself. Accordingly, success on Williams's FCRA claim in this case would not "effectively nullify" the state court default judgment, nor is it true that Williams's federal claims can succeed only to the extent that the state court wrongly decided the issues before it. *See Alvarez*, 679 F.3d at 1263. Because Williams's FCRA claim is not inextricably intertwined with the state court default judgment, the *Rooker-Feldman* doctrine does not bar the claim.

## B. Failure to State a Viable Claim Under the FCRA

Despite the foregoing conclusion, Capital One also argues that Troy Williams has not stated a viable claim under 15 U.S.C. § 1681s-2(b), which governs the "[d]uties of furnishers of information upon notice of dispute." 15 U.S.C. § 1681s-2(b) (alteration supplied). The term "funisher of information" is not explicitly defined by the FCRA, "but 'is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness.'" *Hillerson v. Green Tree Servicing, LLC*, No. 8:14-CV-1038-T-23MAP, 2014 WL 5439593, at *1 n.1 (M.D. Fla. Oct. 24, 2014) (quoting *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1009 n. 2 (D. Colo. 2012)).

Capital One undisputably is plaintiff's creditor, but it nevertheless asserts that it is not a "furnisher of information" within the meaning of the statute, because it was not the party who notified Equifax of the default judgment against plaintiff. That argument is supported by the statutory language. Section 1681s-2(b) sets forth the duties of a "person" after that "person" receives notice of a dispute "with regard to the completeness or accuracy of *any information provided by* [*that*] *person* to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1) (alteration supplied).[29] *See also West v. JP Morgan Chase*, No. 3:17-CV-01450, 2017 WL 5624496, at *3 (M.D. Tenn. Nov. 22, 2017) ("Although the statute does not expressly define the term 'furnishers of information,' the statute delineating such furnishers' duties implies that a furnisher of information is any entity that provides information 'relating to a consumer' to any consumer reporting agency.").

According to plaintiff's Equifax credit report, a copy of which was attached to the affidavit he submitted in support of his Second Amended Complaint, Equifax obtained information about the default judgment "from local, state and federal courts *through a third party vendor, LexisNexis.*"[30] Because LexisNexis, and not Capital

---

[29] The FCRA defines the term "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

[30] Doc. no. 58 (Plaintiff's Affidavit), at ECF 17 (Equifax credit report) (emphasis supplied). It is appropriate to consider the Equifax credit report, because it was attached to the affidavit plaintiff submitted in support of his Second Amended Complaint and, therefore, the authenticity of the

One, provided Equifax with the information about Capital One's judgment against plaintiff, Capital One cannot be considered a "furnisher of information" for the purposes of plaintiff's FCRA claim, and it cannot be held responsible for failure to follow any of the investigatory and reporting procedures set forth in 15 U.S.C. § 1681s-2(b)(1). *Cf. Donohue v. C. Blosenski Disposal Co.*, No. 05-5356, 2006 WL 3423888, at *1 (E.D. Pa. Nov. 28, 2006) (holding that a creditor who provided information regarding a past due debt to a collection agency, instead of a consumer reporting agency, was not a "furnisher of information" under the FCRA).[31]

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, the court concludes that it possesses subject matter jurisdiction to consider plaintiff's Fair Credit Reporting Act claim against Capital One. Even so, plaintiff has failed to state an FCRA claim upon which relief can be granted. Accordingly, Capital One's motion to dismiss plaintiff's Second Amended Complaint is GRANTED, and all claims asserted against Capital One are

---

document cannot reasonably be disputed. *See Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (holding that it is appropriate to consider a document attached to a motion to dismiss when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss").

[31] Despite plaintiff's assertion to the contrary, it is irrelevant whether plaintiff has any ability to control the sources from which Equifax obtains its information. *See* doc. no. 72 (Plaintiff's Brief), at 8 (asserting that plaintiff "has no control over what was sent to him by Equifax as it relates to his credit report, nor does plaintiff have control over who Equifax uses as a 'intermediary-[Lexis-Nexis]' to obtain such information reported") (alteration in original). Because the information did not, in fact, come from Capital One, Capital One is not a "furnisher of information."

DISMISSED with prejudice. Plaintiff's claims against Equifax remain pending.

**DONE** and **ORDERED** this 8th day of January, 2018.

_____
United States District Judge