FILED
2018 Apr-10  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (NORTHEASTERN DIVISION)

TROY WILLIAMS,

     Plaintiff,

v.

CAPITAL ONE BANK (USA), et al.,

     Defendants.

Case No. 5:17-cv-01216-CLS

---

## DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

Kirkland E. Reid
Jones Walker LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
Tel. (251) 432-1414 (main)
Fax (251) 439-7358
Email: kreid@joneswalker.com

***Attorney for Defendant Equifax Information Services LLC***

{MB304118.1}

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

    I.   EQUIFAX IS A CONSUMER REPORTING AGENCY. ...................... 3

    II.  EQUIFAX'S REASONABLE PROCEDURES FOR ASSURING MAXIMUM POSSIBLE ACCURACY AND HANDLING CONSUMER DISPUTES. ................................................................. 3

    III.  MR. WILLIAMS' EQUIFAX CREDIT FILE AND DISPUTES ........... 7

    IV.  EQUIFAX DID NOT PREPARE ANY CONSUMER REPORTS CONCERNING MR. WILLIAMS. ........................................................ 7

STANDARD OF REVIEW ................................................................................. 9

SUMMARY OF THE CLAIMS ....................................................................... 10

ARGUMENT ..................................................................................................... 13

    I.   EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE JUDGMENT ENTERED AGAINST MR. WILLIAMS WAS ACCURATE ................................................. 13

    II.  EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MR. WILLIAMS CLAIMS ARE AN IMPERMISSIBLE COLLATERAL ATTACK ON THE ACCURACY OF THE JUDGMENT. .................................................... 17

    III.  THE *ROOKER-FELDMAN* DOCTRINE BARS MR. WILLIAMS' CLAIMS. ................................................................ 19

    IV.  EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. WILLIAMS' § 1681e(b) CLAIM. ......................................... 21

    V.  EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MR. WILLIAMS HAS NOT ADEQUATELY SUPPORTED HIS CLAIM FOR DAMAGES. ...................................... 23

    VI.  EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. WILLIAMS' CLAIM FOR WILLFUL VIOLATION OF THE FCRA BECAUSE MR. WILLIAMS HAS FAILED TO ESTABLISH THAT EQUIFAX WILLFULLY VIOLATED THE FCRA. ................................................................................... 24

VII. EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. WILLIAMS' STATE LAW CLAIMS. ...................................................27

    A.    Mr. Williams' State Law Claims Are Preempted by the FCRA.....27

    B.    Even Without Preemption, Equifax Is Entitled to Summary Judgment on Mr. Williams' State-Law Claims. .............................28

        1.    Invasion of Privacy (Count II) .................................................28

        2.    Negligent, Wanton and/or Intentional Hiring and Supervision of Incompetent Employees or Agents (Count III) .......................................................................................29

        3.    Unidentified State Law Claims (Count IV) ...........................30

**CONCLUSION**...............................................................................................**30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed. of Labor & Cong. of Indus. Orgs. v. Miami,*
637 F.3d 1178 (11th Cir. 2011) ........................................................10

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)........................................................................9, 10

*Bermudez v. Equifax Info. Servs., LLC,*
No. 6:07–cv–1492–Orl–31GJK, 2008 WL 5235161 (M.D. Fla.
Dec. 15, 2008).....................................................................................24

*Bloom v. I.C. System, Inc.,*
972 F.2d 1067 (9th Cir. 1992) ...........................................................27

*Butler v. Town of Argo,*
871 So.2d 1 (Ala. 2003)................................................................28, 29

*Cahlin v. Gen. Motors Acceptance Corp.,*
936 F.2d 1151 (11th Cir. 1991) ....................................................15, 16

*Certain Underwriters at Lloyds, London v. Waveblast Watersports,
Inc.,*
80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015).......................................9

*Cordoba v. Dillard's, Inc.,*
419 F.3d 1169 (11th Cir. 2005) .........................................................10

*Davis v. Equifax Info. Services LLC,*
346 F. Supp. 2d 1164 (N.D. Ala. 2004)..............................................12

*DeAndrade v. Trans Union LLC,*
523 F.3d 61 (1st Cir. 2008)................................................................17

*DeAndrade v. Trans Union, LLC,*
532 F.3d 61 (1st Cir. 2008)................................................................15

*Dietz v. Smithkline Beecham Corp.,*
598 F.3d 812 (11th Cir. 2010) ...........................................................10

*Eller v. Trans Union, LLC*,
   739 F.3d 467 (10th Cir. 2013) ...............................................................22

*Equifax, Inc. v. Federal Trade Commission*,
   678 F.2d 1047 (11th Cir. 1982) ..........................................................15

*Franklin v. Dean*,
   No. 2:11-cv-683-WKW, 2013 WL 1867105 (M.D. Ala. May 3,
   2013) ....................................................................................................21

*Graham v. Tasa Group, Inc.*,
   2:13-cv-00748, 2015 WL 875228 (N.D. Ala Mar. 2, 2015) .......................20, 21

*Heupel v. Trans Union LLC*,
   193 F. Supp. 2d 1234 (N.D. Ala. 2002)...............................................27

*Hill v. Equifax Info. Servs., LLC*,
   974 F. Supp. 2d 865 (M.D.N.C. 2013) .................................................26

*Jackson v. Equifax Info. Servs., LLC*,
   167 F.App'x. 144 (11th Cir. 2006) ......................................................15

*Jordan v. Trans Union LLC*,
   2006 WL 1663324 (N.D. Ga. 2006) ....................................................24

*Lazarre v. JPMorgan Chase Bank, N.A.*,
   780 F. Supp. 2d 1330 (S.D. Fla. 2011)................................................12

*Mize v. Jefferson City Bd. of Educ.*,
   93 F.3d 739 (11th Cir. 1996) ..............................................................9

*Murphy v. Midland Credit Management, Inc.*,
   456 F. Supp. 2d 1082 (E.D. Mo. 2006) ...............................................16

*Myers v. Experian Info. Sols., Inc.*,
   No. CV-08-S-1865-NW, 2009 WL 10692768 (N.D. Ala. Dec. 11,
   2009) ..................................................................................11, 15, 16, 28

*Pettway v. Equifax Info. Servs., LLC*,
   No. CIV.A. 08-0618-KD-M, 2010 WL 653708 (S.D. Ala. Feb. 17,
   2010) ....................................................................................................22

*Ray v. Equifax Info. Servs., LLC*,
No. 1:04-CV-0482-JOF, 2008 WL 11322890 (N.D. Ga. Feb. 15,
2008), *aff'd*, 327 F. App'x 819 (11th Cir. 2009) ..........................................16, 17

*Ray v. Equifax Information Servs., LLC*,
327 F. App'x. 819 (11th Cir. 2009) ..................................................................15

*Reeves v. Equifax Info. Servs., LLC*,
No. 2:09CV43KS-MTP, 2010 WL 2036661 (S.D. Miss. May 20,
2010) ...................................................................................................................23

*Riley v. Equifax Credit Information Services*,
194 F. Supp. 2d 1239 (S.D. Ala. 2002) ............................................................24

*Ruhl v. Spear*,
5:15–cv–00742–AKK, 2015 WL 5117017 (N.D. Ala. Aug. 28,
2015) ...................................................................................................................20

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ......................................................................................13, 25

*Sampson v. Equifax Information Services, LLC*
2005 WL 2095092 (S.D. Ga. 2005) ..................................................................24

*Wantz v. Experian Info. Solutions*,
386 F.3d 829 (7th Cir. 2004) .............................................................................22

*Whelan v. Trans union Credit Reporting Agency*,
862 F. Supp 824 (E.D.N.Y. 1994) .....................................................................16

*Williams v. Capital One Bank (USA), N.A.*,
192 So. 3d 4 (Ala. Civ. App. 2015) ....................................................1, 2, 14, 15

*Wright v. Experian Info. Sols., Inc.*,
805 F.3d 1232 (10th Cir. 2015) .........................................................................23

## Statutes

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .....................................*passim*

15 U.S.C. § 1681a(d) .........................................................................................22

15 U.S.C. § 1681e(b) ....................................................................................*passim*

15 U.S.C. § 1681h(e) ........................................................................11, 27

15 U.S.C. § 1681i(a) ...............................................................10, 12, 15, 16

15 U.S.C. § 1681n(a) ...................................................................12, 24

Fair Debt Collection Practices Act ................................................21, 26

15 U.S.C. § 1692...........................................................................21

## Other Authorities

Federal Rule of Civil Procedure 56 ..................................................1, 9

Federal Rule of Evidence 201 ........................................................13

Ray, *Let There be False Light*, 84 Minn. L.Rev....................................29

Restatement (Second) of Torts § 652E, cmt. a. (1977) ...........................29

Defendant Equifax Information Services LLC ("Equifax"), pursuant to Federal Rule of Civil Procedure 56(c), hereby moves for summary judgment on Mr. Williams' claims against it.  For the reasons below, Equifax's motion should be granted.

## INTRODUCTION

This is a case under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. Plaintiff, Troy Williams, seeks recovery against Equifax because his credit file contained a state-court judgment ("Judgment") that Capital One Bank (USA), N.A. ("Capital One") obtained against him in the District Court of Madison County, Alabama, on January 21, 2011. A copy of the judgment is attached hereto as Exhibit A. As this Court previously noted, the Alabama Court of Civil Appeals described the circumstances leading to that judgment and its subsequent disposition in *Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4 (Ala. Civ. App. 2015). (*See* Doc. 84 at 6-10). Mr. Williams has challenged the validity of the judgment at least seven times in Alabama state courts and lost each time.

The undisputed material facts establish that Equifax is entitled to judgment as a matter of law on all claims for at least the following reasons: *First*, Mr. Williams has failed to produce any evidence that Equifax ever issued any consumer report concerning him that was inaccurate. To the contrary, the undisputed evidence is that a judgment was entered against him and Equifax

accurately reported it. *Second*, Mr. Williams's claim is an impermissible collateral attack on the judgment Capital One obtained against him. Numerous courts have held that such a collateral attack does not support a claim under the FCRA. *Third*, the *Rooker-Feldman* doctrine precludes this Court from hearing Mr. Williams' claim against Equifax because his claim in this case is that he does not owe the state court judgment and such claim would require this Court to review (and presumably Mr. Williams hopes, invalidate) the state court judgment. *Fourth*, Equifax is entitled to summary judgment on Mr. Williams' § 1681e(b) claim because he has not shown that Equifax prepared any inaccurate consumer reports about him. *Fifth*, Mr. Williams has failed to produce any evidence that Equifax violated the FCRA at all, let alone willfully and, therefore, Equifax is entitled to Mr. Williams' claim for a willful violation of the FCRA. *Sixth*, Mr. Williams' state-law claims are preempted by the FCRA, and, even if they were not, he has wholly failed to support them with facts or argument. For these reasons, and as discussed further below, Equifax's motion should be granted.

## STATEMENT OF FACTS

Equifax submits that there are no genuine issues as to the following facts.

1.     Capital One Bank (USA) N.A. obtained a judgment against Mr. Williams in the amount of $4,078.83. (*See* Doc. 84 at 6-10; *Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4, 5-6 (Ala. Civ. App. 2015).

## I.      EQUIFAX IS A CONSUMER REPORTING AGENCY.

2.      Equifax is a consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. (Declaration of Celestina Gobin ("Gobin Decl"), attached as Exhibit B, ¶ 5).

3.      As such, it gathers information about consumers from various sources, including banks, collection agencies, and court records, which it uses to create credit files on more than 200 million consumers in the United States. (*Id.* ¶ 6).

4.      Equifax uses those files to prepare consumer reports for use by its subscribers in evaluating the potential credit risk of consumers, among other permissible purposes. (*Id.* ¶ 7).

5.      Equifax maintains a credit file for Mr. Williams. (*Id.* ¶ 8).

## II.     EQUIFAX'S   REASONABLE   PROCEDURES   FOR   ASSURING MAXIMUM POSSIBLE ACCURACY AND HANDLING CONSUMER DISPUTES.

6.      Equifax maintains detailed procedures designed to assure maximum possible accuracy of the information it reports to its subscribers regarding consumers and to correct errors that are brought to its attention via consumer disputes. (*Id.* ¶ 9).

7.      Equifax accepts information only from those sources of information that it has determined are reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationships with it. (*Id.* ¶ 10).

8.     In the case of public records, Equifax utilizes the services of an industry leading public records vendor to obtain public records for it from courthouses and other sources. (*Id.* ¶ 11).

9.     Equifax maintains detailed policies and procedures designed to assure that it conducts reasonable reinvestigations of information disputed by consumers as inaccurate. (*Id.* ¶ 12).

10.     A consumer may contact Equifax to request a consumer disclosure or dispute information reporting in his or her credit file by telephone, mail, or through an Internet portal on Equifax's website. (*Id.* ¶ 13).

11.     Upon receipt of a dispute, and after locating the consumer's credit file, Equifax opens an Automated Consumer Interview System ("ACIS") case that tracks the process of the reinvestigation. (*Id.* ¶ 14).

12.     Equifax then reviews and considers all relevant information including documentation, if any, provided by the consumer and reviews the contents of the consumer's credit file. (*Id.* ¶ 15).

13.     If Equifax is able to make updates based on the information it has, it will do so. (*Id.* ¶ 16).

14.     That may occur, for example, when the consumer has changed a name or address and provides Equifax with sufficient proof of the change to allow it to add the name or address to the credit file. (*Id.* ¶ 17).

15.    Another example is that Equifax will remove a former address disputed by a consumer, even without requiring the consumer to provide any additional identifying information demonstrating that the address is no longer correct. (*Id.* ¶ 18).

16.    If further investigation is required, Equifax notifies the source of the account information (referred to as the "data furnisher") of the consumer's dispute, identifies the nature of the consumer's dispute, and includes the consumer's account information as it then appears in Equifax's credit file. (*Id.* ¶ 19).

17.    These communications are generally made through a process wherein Equifax transmits a form by electronic mail called an Automated Consumer Dispute Verification ("ACDV"). (*Id.* ¶ 20).

18.    The ACDV electronic mail process allows consumer reporting agencies to communicate with data furnishers through use of an array of pre-defined codes and narrative phrases. (*Id.* ¶ 21).

19.    This standardized process enhances consistency and reduces misunderstandings, which otherwise would be significant given the large number of disputes processed by Equifax and the other consumer reporting agencies every day. (*Id.* ¶ 22).

20.     When the data furnisher receives the dispute from Equifax, it is generally required, both by its contract with Equifax and by the FCRA, to conduct its own investigation and report the results back to Equifax. (*Id.* ¶ 23).

21.     If the data furnisher advises Equifax to delete or otherwise update the account information, then Equifax takes the necessary action and notifies the consumer. (*Id.* ¶ 24).

22.     Upon completion of the reinvestigation, Equifax sends the consumer the results along with a summary of the consumer's rights under the FCRA, additional steps the consumer may take, and a description of the procedures used to reinvestigate the dispute. (*Id.* ¶ 25).

23.     The individuals that handle consumer disputes must undergo a training process whereby they are trained on the reinvestigation policies and procedures created by Equifax. (*Id.* ¶ 26).

24.     First, the individuals must participate in classroom instruction. (*Id.* ¶ 27).

25.     Upon completion of the classroom instruction, each participant is required to pass a competency test. (*Id.* ¶ 28).

26.     A participant who achieves a passing grade next receives on-the-job training as they handle consumer disputes. (*Id.* ¶ 29).

## III.   MR. WILLIAMS' EQUIFAX CREDIT FILE AND DISPUTES

27.   Mr. Williams' Equifax credit file contained a Judgment in the amount of $4,078 in favor of Capital One Bank USA N.A. and against Mr. Williams (the "Judgment"). (*Id.* ¶ 30).

28.   Equifax's records show that it was contacted by Mr. Williams two times concerning the Judgment: (1) on June 10, 2017, Equifax received a letter from Mr. Williams disputing the Capital One Bank USA N.A. account and requesting to see the original consumer contract between Capital One and him with his signature on it; and (2) on August 17, 2017, Equifax received "Plaintiff's Affidavit" recounting the history of his first dispute letter. (*Id.* ¶ 31).

29.   Other than the communications on the two dates listed above, Equifax has no record of any other communications from Mr. Williams disputing the Judgment prior to filing this lawsuit. (*Id.* ¶ 32).

30.   Equifax inadvertently did not respond to Mr. Williams' first dispute. By the time Equifax received his second dispute on August 18, 2017, the Judgment was no longer reporting on his credit file. (*Id.* ¶ 33).

## IV.   EQUIFAX DID NOT PREPARE ANY CONSUMER REPORTS CONCERNING MR. WILLIAMS.

31.   On July 6, 13, and 28, 2017 and on October 19, 2017, Equifax received requests from Credit Karma, Inc. ("Credit Karma") for a copy of Mr. William's credit disclosure. (*Id.* ¶ 34).

{MB304118.1}

7

32.     Equifax has an agreement with Credit Karma may request copies of a consumer's disclosure for the purposes of providing it to the consumer It is Equifax's understanding that Credit Karma is not in the business of issuing credit to consumers. (*Id.* ¶ 35).

33.     Pursuant to its relationship with Credit Karma, Inc., Equifax provided it with Mr. Williams' credit file disclosures in response to those inquiries. (*Id.* ¶ 36).

34.     A "consumer report" is different from a "consumer disclosure" (also known as a credit file, credit report, or credit disclosure) that is provided to a consumer as a record of his own credit file. "Consumer reports" are generated by a consumer reporting agency and delivered to a third party such as an employer, insurer, or lender, for use in deciding whether the consumer is eligible for credit or for other purposes. (*Id.* ¶ 37).

35.     Equifax did not provide Mr. William's consumer report to any third parties for the purposes of credit, employment, or insurance, at any time between July 20, 2015, and October 17, 2017. (*Id.* ¶ 38).

36.     Further, Equifax did not prepare any consumer reports concerning Mr. Williams from July 20, 2015, through October 17, 2017. (*Id.* ¶ 39).

37.     Equifax did not act to willfully harm Mr. Williams or his credit file. (*Id.* ¶ 40).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the moving party is entitled to summary judgment if there is no genuine issue of material fact, and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "An issue is genuine if 'a reasonable trier of fact could return judgment for the non-moving party.'" *Certain Underwriters at Lloyds, London v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015) (quoting *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 247-48). *See also Matsushita Elec. Indus. Co. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In considering a motion for summary judgment, the court is required to view the facts and inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist

that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010).

To meet that burden, the non-moving party may not simply rest on mere allegations or denials, and a "scintilla of evidence" is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 251. Moreover, "unsupported speculation… does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)). "When there is a 'complete failure of proof concerning an essential element on the nonmoving party's case,' the motion for summary judgment should be granted." *Am. Fed. of Labor & Cong. of Indus. Orgs. v. Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 323).

## SUMMARY OF THE CLAIMS

Mr. Williams seeks recovery against Equifax under two sections of the FCRA: (1) 15 U.S.C. § 1681e(b) (CRA must maintain "reasonable procedures" to assure maximum accuracy when communicating information used to establish eligibility for credit, etc.), (Doc. 101 at 24-25); and (2) 15 U.S.C. § 1681i(a) (CRA must conduct a reasonable reinvestigation to determine whether disputed

information is inaccurate when information is disputed by the consumer), (Doc. 101 at 17-24). Mr. Williams also purports to bring a claim under a third section of the FCRA – 15 U.S.C. § 1681h(e) "Limitation of liability." (Doc. 101 at 22-24). Section 1681h(e) does not, however, authorize action; rather, as its title suggests, it limits liability by preempting state-law claims except as to "false information furnished with malice or willful intent to injure" a consumer. 15 U.S.C. § 1681h(e). Mr. Williams seeks recovery for state-law claims; however, he fails to identify these claims let alone support them with facts or argument. (Doc. 101 at 24).

Section 1681e(b) states, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prove negligent noncompliance with § 1681e(b), Mr. Williams must establish that (1) inaccurate information was included in Mr. Williams' credit report; (2) the inaccuracy was due to Equifax's failure to follow reasonable procedures to assure maximum possible accuracy; (3) Mr. Williams suffered actual damages; and (4) Mr. Williams' damages were caused by the inclusion of the inaccurate information in the report. *See Myers v. Experian Info. Sols., Inc.*, No. CV-08-S-1865-NW, 2009 WL 10692768, at *5 (N.D. Ala. Dec. 11, 2009) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936

F.2d 1151, 1154–56 (11th Cir. 1991)); *Davis v. Equifax Info. Services LLC*, 346 F. Supp. 2d 1164, 1171 (N.D. Ala. 2004).

Section 1681i(a) states, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer," the agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). To prevail on a claim of negligent noncompliance with the FCRA § 1681i(a), Mr. Williams must prove: (1) his credit report contains inaccurate or incomplete information; (2) he notified Equifax of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) Equifax failed to respond or conduct a reasonable reinvestigation of the disputed items; and (5) the failure to reinvestigate caused Mr. Williams to suffer actual damages. *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011) (citing *Bermudez v. Equifax Info. Servs., LLC*, No. 6:07–cv–1492–Orl–31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008)).

Mr. Williams also alleges that Equifax willfully violated the FCRA. The FCRA permits an award of statutory and punitive damages only if a consumer reporting agency "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct under the FCRA encompasses

both intentional and reckless violations of the law. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). Reckless misconduct is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). For a willfulness claim to succeed, the defendant must have engaged in much more than unreasonable conduct; it must have run a risk of violating the law "substantially greater" than the risk associated with mere carelessness. *Id.* at 69.

## **ARGUMENT**

I.   **EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE JUDGMENT ENTERED AGAINST MR. WILLIAMS WAS ACCURATE.**

Capital One obtained a judgment against Mr. Williams. Exhibit A. Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: …(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Further, the Rule provides that "[t]he court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information. Red. R. Evid. 201(c). Therefore, Equifax requests that, pursuant to Federal Rule of Evidence 201, this Court take judicial notice of the judgment entered against Mr. Williams as shown in the

attached Exhibit A. The judgment is also discussed in *Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4 (Ala. Civ. App. 2015) as well as this Court's order granting Capital One's motion to dismiss. (*See* Doc. 84 at 6-10).

Prior to filing the instant lawsuit, Mr. Williams sought to challenge the validity of the judgment at least seven times. *See*, *Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4 (Ala. Civ. App. 2015). Each time he was denied. *Id*. Mr. Williams has already litigated the validity of the judgment and lost. *Id*. The Court of Civil Appeals of Alabama noted that in September 2011, Mr. Williams sought relief from the judgment entered against him as well as "withdrawal of any adverse information from his credit records." *Id*. at 5. The district court denied that request. *Id*. Two years later, on September 13, 2013, Mr. Williams filed "an independent action seeking to set aside the default judgment." *Id*. On September 23, 2013, the court denied the requested relief. *Id*. Mr. Williams then sought to amend his pleading and reconsideration of the Court's order; this request was denied by operation of law 14 days later. *Id*. Williams then sought to amend and for reconsideration another time. *Id*. The district court denied the relief by order, although the Court of Civil Appeals found that order to be a nullity since any request to amend or for reconsideration had already been denied by operation of law. *Id*. at 5-6. Mr. Williams then sought relief by way of appeal to the circuit Court. *Id*. at 6. The circuit court denied the appeal as untimely. *Id*. Mr. Williams

then sought further post-judgment relief, which the circuit court again denied. *Id*. Mr. Williams then appealed to the Court of Civil Appeals which affirmed the dismissal of the appeal by the circuit court. *Id*.

Although Mr. Williams once again complains about the validity of the judgment, the public record proves otherwise. Thus, Mr. Williams cannot establish any inaccuracy in Equifax's reporting. Mr. Williams cannot maintain an FCRA claim unless he demonstrates that the credit report he challenges was inaccurate. *See Equifax, Inc. v. Federal Trade Commission*, 678 F.2d 1047, 1051 (11th Cir. 1982); *see also Ray v. Equifax Information Servs., LLC*, 327 F. App'x. 819, 826 (11th Cir. 2009) (prima facie violation of § 1681e(b) requires consumer to present evidence that a credit reporting agency's report was inaccurate); *Jackson v. Equifax Info. Servs., LLC*, 167 F.App'x. 144, 146 (11th Cir. 2006) (same); *Cahlin*, 936 F.2d at 1160 (section 1681i(a) claim is properly raised when a credit report contains an inaccurate entry); *Myers v. Experian Info. Sols., Inc.*, No. CV-08-S-1865-NW, 2009 WL 10692768, at *6 (N.D. Ala. Dec. 11, 2009). ("To survive a motion for summary judgment, plaintiff must establish that her consumer file at [CRA] contained an inaccuracy.")

If the plaintiff "fails this initial burden . . . a court need not inquire further" and the defendant credit reporting agency is entitled to summary judgment. *DeAndrade v. Trans Union, LLC*, 532 F.3d 61, 66-68 (1st Cir. 2008). "Accurate

reporting by a credit reporting agency is a complete defense to both a section 1681e(b) and 1681i(a) claim." *Murphy v. Midland Credit Management, Inc.,* 456 F. Supp. 2d 1082, 1089 (E.D. Mo. 2006); *see also Cahlin*, 936 F.2d at 1156. The "'threshold question' is whether the challenged credit information is accurate; if the information is accurate, 'no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary.'" *Whelan v. Trans union Credit Reporting Agency*, 862 F. Supp 824 (E.D.N.Y. 1994) (quoting *Houston v. TRW Info. Servs.,* 707 F. Supp. 689, 691 (S.D.N.Y.)).

In this case, Mr. Williams has failed to adduce any evidence of an error in an Equifax consumer report about him or extant within his consumer file at Equifax. *See Myers*, 2009 WL 10692768, at *6 (Section 1681i(a) requires plaintiff to prove inaccuracy but not issuance of credit report to third party). Indeed the evidence proves the opposite.

Mr. Williams bears the burden of proving inaccuracy. *Ray v. Equifax Info. Servs., LLC*, No. 1:04-CV-0482-JOF, 2008 WL 11322890, at *10 (N.D. Ga. Feb. 15, 2008), *aff'd,* 327 F. App'x 819 (11th Cir. 2009). He has failed to carry that burden. Through its judicial proceedings, the state courts of Alabama confirmed that the Judgment was accurate. Mr. Williams' failure to produce evidence of inaccuracy is a complete bar to his claims against Equifax. Accordingly, Equifax is entitled to summary judgment.

## II. EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MR. WILLIAMS CLAIMS ARE AN IMPERMISSIBLE COLLATERAL ATTACK ON THE ACCURACY OF THE JUDGMENT.

Numerous courts have held that consumer reporting agencies are neither qualified nor required by the FCRA to delve into the merits of a legal dispute between a consumer and a creditor to determine the accuracy of disputed Judgment information. *See*, *e.g.*, *Carvalho*, 629 F.3d at 891 ("Because [Consumer Reporting Agencies] CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68-69 (1st Cir. 2008) (consumer reporting agency not required to resolve dispute where plaintiff admitted that he was responsible for the disputed loan, but denied that he had agreed to use his home as collateral). "[C]redit reporting agencies are not tribunals. They simply collect and report information furnished by others" and are "ill equipped" to resolve legal disputes. *Carvalho*, 629 F.3d at 891. CRAs are not required to undertake "a searching inquiry into the consumer's legal defenses to payment." *Id*. at 891-892.

Mr. Williams' dispute regarding the Judgment appears to be based on his assertion that it was not proper:

> According to the "provisions" the Fair Credit Reporting Act, section 609(a)(1)(A), you are required when put on "notice" via letter by Federal Law, to verify through the physical verification of the *original signed consumer contract* as it relates to *Capital One Bank N.A. USA*, as

17

well as, any and all accounts you post on a credit report. Otherwise, anyone paying for your reporting services could fax, mail or email in a fraudulent account.

I demand to see verifiable proof of (*an original consumer contlract with my signature on it*) you have on file of the accounts listed below. Your failure to positively verify these accounts has "hurt" and "inhibited" my ability to obtain credit. Under FCRA, unverified accounts must be removed and if you are unable to provide me a copy ofvelrifiable proof, you must remove the accounts listed below.

(Doc. 101-3 at 18, EIS-WILLIAMS-000006). The Dispute Letter reflects a fundamental flaw.

Mr. Williams erroneously believes that the information in his credit file concerning the Judgment was an account tradeline reported by Capital One, instead of what it actually was: public record information concerning a Judgment obtained by Capital One in Alabama state court. Equifax's credit file did not show that Mr. Williams had owed money on an account held by Capital One and that debt was governed by a contract. Instead, it showed that Mr. Williams had owed money to Capital One and that debtt was governed by the Judgment. The accuracy of the Judgment rested in the hands of the Alabama state courts.

Consumer reporting agencies are not required to deem consumers "innocent until proven guilty by a proper reinvestigation." *Carvalho*, 629 F.3d at 881. Under these circumstances, Equifax was not required to arbitrate the dispute between Mr. Williams and Capital One concerning the legitimacy of the Judgment. The state

courts of Alabama performed that duty already. Therefore, Mr. Williams' Motion should be denied.

## III.   THE *ROOKER-FELDMAN* DOCTRINE BARS MR. WILLIAMS' CLAIMS.

Mr. Williams' claims against Equifax appear to be based on a contention that the Judgment is invalid. (*See, e.g.,* Doc. 57 ¶ 7 ("Williams contacted all three CRA's [sic] [Credit Reporting Agencies] in and around 2014 via mail in which all three agencies 'verified' a 'civil claim judgment' in Williams' first dispute attempt"); ¶¶ 30-31 ("Capital One Bank's item in dispute by consumer Williams . . . was charged off in or around 2008 for approximately $2,300. Defendant Capital One Bank reported to the credit reporting agencies, like Equifax, Experian, and TransUnion $4,078.83, an inaccurate amount owed without providing signed effective cardholder agreement copyrighted 2004."); ¶ 54 ("The false information consists of an inaccurate balance of $4,078.83 reported, along with a "lack of signed effective agreement copyrighted 2004. ") (emphasis omitted)).

Because Williams' claims against Equifax are based on a contention that he does not owe the state court judgment, it is barred by the *Rooker-Feldman* doctrine. As this Court has previously recognized,

> the Rooker-Feldman doctrine [. . .] prohibits federal courts from exercising jurisdiction over "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." In order for the doctrine to

> apply, four factors must be met: (1) the party in federal court is the same
> as the party in state court; (2) the prior state court ruling was a final or
> conclusive ruling on the merits; (3) the party seeking relief in federal
> court had a reasonable opportunity to raise its claims in the state court
> proceeding; and (4) the issue before the court was either adjudicated
> before the court or was inextricably intertwined with the state court's
> judgment.

*Ruhl v. Spear*, 5:15–cv–00742–AKK, 2015 WL 5117017, at *2 (N.D. Ala. Aug. 28, 2015) (internal citations omitted) (alteration added). This Court has also stated that "'A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Ruhl*, 2015 WL 5117017, at *2. That is exactly what we have here.

Mr. Williams is the same party in federal court as he was in the state court litigation resulting in a final judgment entered against him.[1] Mr. Williams had an opportunity to raise the issues challenging the state court judgment at the state court level. *See, e.g.,*, *Graham v. Tasa Group, Inc.*, 2:13-cv-00748, 2015 WL 875228, at *7 (N.D. Ala Mar. 2, 2015) (citations omitted) (a" default judgment [. . .] counts for purposes of Rooker–Feldman"). Moreover, the issue before this Court -- the validity of the judgment Capital One obtained -- was litigated in the state court proceeding. Further, the issue is inextricably intertwined with the state

---

[1] Identity of all parties is not a requirement. In *Ruhl*, the federal court dismissed claims against persons who were not parties to the state court lawsuit pursuant to the *Rooker Feldman* doctrine. *Ruhl*, 2015 WL 5117017, at *3 (dismissing claims over judges because the court lacked jurisdiction over them).

court's judgment as demonstrated through examination of *Franklin v. Dean*, No. 2:11-cv-683-WKW, 2013 WL 1867105 (M.D. Ala. May 3, 2013). In that case, a plaintiff filed suit for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA), arising out of an attempt to collect debt that had been reduced to a judgment. *Franklin*, 2013 WL 1867105, at *1. In conjunction with the litigation, the plaintiff alleged that she did not owe the debt sought to be collected. *See Id.* at *6. Holding that her claims were barred by the *Rooker-Feldman* doctrine, the U.S. District Court for the Middle District of Alabama stated:

> To the extent that Ms. Franklin asks this court to undo the state district court's default judgment against her and to decide whether she owed the underlying debt, the court lacks subject matter jurisdiction to do so under the *Rooker-Feldman* doctrine [. . .] The state-court default judgment established that Ms. Franklin owed the debt that Mr. Dean later sought to collect on ASECU's behalf. In attacking the validity of the underlying debt in this lawsuit, Ms. Franklin essentially asks this court to review the state-court judgment and give her relief denied in state court.

*Id.* 8-9. For the reasons stated above, Mr. Williams' claims are barred by the *Rooker-Feldman* doctrine.

## IV.   EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. WILLIAMS' § 1681e(b) CLAIM.

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Thus to establish his *prima facie* case, Mr.

Williams must provide evidence to show that Equifax provided an inaccurate consumer credit report to a third party.

A "consumer report" or "consumer credit report" is different from a consumer disclosure (also known as a credit file, credit report, or credit disclosure) that is provided to a consumer as a record of her own credit file. *Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708, at *7 (S.D. Ala. Feb. 17, 2010). "Consumer reports" are generated by a consumer reporting agency and delivered to a third party such as an employer, insurer, or lender, for use in deciding whether the consumer is eligible for credit or for other purposes. *Eller v. Trans Union, LLC,* 739 F.3d 467, 474 (10th Cir. 2013) (citing 15 U.S.C. § 1681a(d)(1)). There cannot be a consumer report without delivery to a third party. *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004). On the other hand, a consumer disclosure is the credit reporting agency's file which it provides to the consumer, not third parties, and contains "information solely as to transactions or experiences between the consumer and the person making the report ..." 15 U.S.C. § 1681a(d); § 1681g; see also 15 U.S.C. § 1681a(d)(2)(A)(i) ("report containing information solely as to transactions or experiences between the consumer and the person making the report").

In the present case, Equifax did not prepare any consumer reports concerning Mr. Williams from July 20, 2015(two years prior to filing this action),

through October 17, 2017 (date of filing Second Amended Complaint). (*Gobin Decl.* ¶ 39). Indeed, Equifax only provided Mr. Williams credit file to Credit Karma for purposes unrelated to any application for credit, employment, or insurance. Mr. Williams has not pointed to any evidence that a consumer report issued by Equifax was a causal factor in an adverse credit decision affecting him. Thus, Equifax is entitled to summary judgment on Mr. Williams' § 1681e(b) claims. *See Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015).

## V.   EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MR. WILLIAMS HAS NOT ADEQUATELY SUPPORTED HIS CLAIM FOR DAMAGES.

Mr. Williams' emotional damages are speculative at best and not corroborated by any credible evidence.[2] Summary judgment is appropriate in a case brought under the FCRA when the plaintiff cannot present evidence establishing that the defendant proximately caused him damages. *Reeves v. Equifax Info. Servs., LLC*, No. 2:09CV43KS-MTP, 2010 WL 2036661, at *6 (S.D. Miss. May 20, 2010) (collecting cases). "A plaintiff must first show proof of actual

---

[2] In his Second Amended Complaint, Mr. Williams alleges that he has suffered denial of income producing opportunities, lost opportunity to receive credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation. (Doc. 57 ¶ 78). Mr. Williams further alleges that his emotional harm was expressed and experienced by him in the form of mental anguish, anger, headaches, anxiety, depression, worry, sleep deprivation, stomach problems, as well as lost [sic] of enjoyment of life. (*Id.* ¶¶ 73, 88)). Mr. Williams has offered no evidence to support these allegations.

injury, such as evidence of the injured party's conduct and observations of others, for damages to be awarded for mental or emotional distress under the FCRA." *Jordan v. Trans Union LLC*, 2006 WL 1663324, 7-8 (N.D. Ga. 2006); *Riley v. Equifax Credit Information Services*, 194 F. Supp. 2d 1239, 1244 -45 (S.D. Ala. 2002). Although Mr. Williams does not need to prove that he confided his distress to a medical professional, he must produce some form of independent, corroborating evidence of his humiliation and embarrassment to recover compensatory damages for emotional distress. *Sampson v. Equifax Information Services, LLC* 2005 WL 2095092, *5 (S.D. Ga. 2005). Evidence of non-economic damages "consisting only of [plaintiff's] own vague testimony that [he] suffered anxiety and lost weight as a result of 'trying to correct [his] credit'" is wholly "lacking." *Bermudez*, 2008 WL 5235161, at *3.

Here too, Mr. Williams' self-serving allegations are insufficient. His allegations are vague, conclusory, and lack credibility. There is no degree of specificity, credibility, or corroboration.

## VI. EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. WILLIAMS' CLAIM FOR WILLFUL VIOLATION OF THE FCRA BECAUSE MR. WILLIAMS HAS FAILED TO ESTABLISH THAT EQUIFAX WILLFULLY VIOLATED THE FCRA.

The FCRA permits awards of statutory and punitive damages only if a consumer reporting agency "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct under the FCRA

encompasses both intentional and reckless violations of the law. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). Reckless misconduct is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). For a willfulness claim to succeed, the defendant must have engaged in much more than unreasonable conduct; it must have run a risk of violating the law "substantially greater" than the risk associated with mere carelessness. *Id*. at 69. Although some courts have stated that willfulness must generally be determined by a jury, the Supreme Court demonstrated otherwise in *Safeco*, where it held, as a matter of law, that the defendant had not acted recklessly. *See id*. at 71.

Mr. Williams has failed to produce any evidence that Equifax prepared any consumer reports, that his credit file contained inaccurate information, or that Equifax acted willfully. Because Mr. Williams has no claims of any sort for the reasons discussed above, it follows *a fortiori* that he cannot show willfulness. Even if Mr. Williams could establish a violation of the FCRA, which he cannot, there is no evidence any violation was willful. As discussed above, Mr. Williams challenged the validity of the judgment in various state courts at least seven times. Each time his challenge was rejected. He then turned to Equifax in an attempt to challenge the validity of the judgment. Mr. Williams' dispute conflated the debt

validation requirements of debt collectors under the FDCPA with the reinvestigation requirements of CRAs under the FCRA. Equifax is not required to provide the sort of "proof" sought by Mr. Williams in his dispute letter.

In *Hill v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 865, 876 (M.D.N.C. 2013), a district court granted summary judgment on claims for willful FCRA violations where the plaintiff had "presented evidence of numerous mistakes by Defendant." The plaintiff's "speculation" regarding an alleged systemic problem with the CRA's procedures was "not sufficient to rebut sworn testimony directed at the actual procedures employed in the interactions between Plaintiff and Equifax." *Hill*, 974 F. Supp. 2d at 876-77 (citing *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011) (affirming summary judgment with respect to willfulness where plaintiff had "pointed to no described practice that would be a reckless violation of the FCRA" and where there was "no evidence that [CRA]'s specific actions with respect to Birmingham were reckless")). Here, Mr. Williams disputed an accurate judgment. Any violation related to the judgment could not be willful.

Summary judgment should be granted on the willfulness claim here. There is simply no evidence of any willful, or even negligent violation. Accordingly, Equifax is entitled to summary judgment on Mr. Williams' willfulness claim.

## VII.   EQUIFAX IS ENTITLED TO SUMMARY JUDGMENT ON MR. WILLIAMS' STATE LAW CLAIMS.

### A.   Mr. Williams' State Law Claims Are Preempted by the FCRA.

Mr. Williams' state law claims are preempted by the FCRA. "Section 1681h(e) is recognized as providing qualified immunity for consumer reporting agencies with an exception from such qualified immunity being made for actions pursuant to sections 1681n and 1681o .... Such an exception was not meant to lessen the standard necessary to overcome this qualified immunity in defamation actions." *Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1242 (N.D. Ala. 2002) (quoting *Thornton v. Equifax, Inc.,* 619 F.2d 700, 703 (8th Cir. 1980), *cert. denied,* 449 U.S. 835 (1980)); *see Bloom v. I.C. System, Inc.,* 972 F.2d 1067, 1069 (9th Cir. 1992). Mr. Williams' state-law claims are barred by the qualified immunity of FCRA § 1681h(e).[3] Equifax is entitled to summary judgment on Mr. Williams' state-law claims because there is no evidence that Equifax maliciously or willfully furnished false information with the intent to injure him. *See* 15 U.S.C. § 1681h(e). This Court has denied state-law claims such as negligence, malice,

---

[3] FCRA § 1681h(e) provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer.

wantonness, recklessness, and/or intentional conduct, defamation, libel, slander, and invasion of privacy under similar circumstances. *See Myers v. Experian Info. Sols., Inc.*, No. CV-08-S-1865-NW, 2009 WL 10692768, at *10 (N.D. Ala. Dec. 11, 2009) (dismissing state-law claims where plaintiff provided no evidence of willfulness or that the CRA acted maliciously or with a willful intent to injure her). Accordingly, Equifax's motion for summary judgment as to Mr. Williams' state-law claims should be granted.

**B.   Even Without Preemption, Equifax Is Entitled to Summary Judgment on Mr. Williams' State-Law Claims.**

**1.   Invasion of Privacy (Count II)**

In his Second Amended Complaint, Mr. Williams alleges that Equifax invaded his privacy by "credit reporting this debt." (Doc. 57 at ¶¶ 85-92). The Alabama Supreme Court stated the elements of such an invasion of privacy claim:

> " ' "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> " ' "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> " ' "(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." ' "

*Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003) (quoting *Schifano v. Greene County Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993), quoting in turn Restatement (Second) of Torts § 652E (1977)).

"A false-light claim does not require that the information made public be private," but it does require that "the information ... be false." 871 So.2d at 12. *See* Restatement (Second) of Torts § 652E, cmt. a. (1977). Thus, falsity is the *sine qua non* of a false-light claim. Moreover, unlike defamation, truth is not an affirmative defense to a false-light claim; rather, "falsity" is an element of the plaintiff's claim, on which the plaintiff bears the burden of proof. Ray, *Let There be False Light*, 84 Minn. L.Rev. at 736 ("false light plaintiffs therefore bear [a] heavier burden [than defamation plaintiffs] because they must make an affirmative showing of falsity rather than leaving it to defendants to justify the offensive statement").

Here, Mr. Williams has adduced no evidence that Equifax made the Judgment public, that the Judgment was false, or that Equifax had knowledge of or acted in reckless disregard as to the falsity. Accordingly, Equifax is entitled to summary judgment dismissing Mr. Williams' invasion of privacy claim.

### 2. Negligent, Wanton and/or Intentional Hiring and Supervision of Incompetent Employees or Agents (Count III)

In his Second Amended Complaint, Mr. Williams alleges that Equifax failed to properly hire and supervise its employees and agents. (Doc. 57 at ¶¶ 93-96). Mr. Williams adduces no evidence that this occurred. To the contrary, Equifax presented evidence that its employees and agents undergo a training process and are required to pass a competency test before receiving on the job training. (Gobin

Decl. ¶¶ 26-29). Accordingly, Equifax is entitled to summary judgment dismissing Mr. Williams' claim concerning Equifax's employees and agents.

### 3.    Unidentified State Law Claims (Count IV)

In Second Amended Complaint, Mr. Williams alleges Equifax violated several unidentified state law. (Doc. 57 ¶¶ 97-103). Each of these allegations is dependent on Equifax publishing information and that information being false. Mr. Williams has not produced any evidence that Equifax produced a consumer report to any third party, and he has not produced any evidence that Equifax has published anything false about him. Accordingly, the Court should grant Equifax's motion regarding Mr. Williams' state-law claims.

## <u>CONCLUSION</u>

For the reasons stated above, Equifax's motion should be granted.

Respectfully submitted,


*/s/  Kirkland E. Reid*
Kirkland E. Reid (REIDK9451)
Attorney for Equifax Information
Services LLC

OF COUNSEL:
Jones Walker LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
Tel. (251) 432-1414 (main)
Fax (251) 439-7358
Email: kreid@joneswalker.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on April 10, 2018, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Troy T. Williams
PO Box 464
Harvest, AL 35749

/s/ *Kirkland E. Reid*
Kirkland E. Reid

# EXHIBIT A

ELECTRONICALLY FILED
1/21/2011 3:58 PM
DV-2010-902072.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
JANE C. SMITH, CLERK

### IN THE DISTRICT COURT OF MADISON COUNTY, ALABAMA

| | | |
|---|---|---|
| CAPITAL ONE BANK (USA) NA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **Case No.:** DV-2010-902072.00 |
| | ) | |
| WILLIAMS TROY T, | ) | |
| Defendant. | ) | |

### ORDER

This cause comes before the court upon the Plaintiff's application for a default in the above-styled matter. After reviewing the court record, the court finds that the defendant has been duly served and has failed to answer or otherwise defend upon the complaint. The court further finds the default has been entered in the above styled matter and that a default judgment is due to be entered by the court.

Wherefore, it is hereby ordered, adjudged and decreed that a judgment by default is entered in favor of the Plaintiff, in the sum of $4,078.83 plus costs of court and such post-judgment interest as may accrue on this judgment for which execution may issue.

DONE this 21st day of January, 2011.

/s RUTH ANN HALL
_____

DISTRICT JUDGE

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| TROY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:17-cv-01216-CLS |
| v. | ) | |
| | ) | |
| CAPITAL ONE BANK (USA), et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF CELESTINA GOBIN

I, Celestina Gobin, hereby make this declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am over the age of 21 years and am otherwise competent to give this declaration.

2.      I am employed by Equifax Information Services LLC ("Equifax") as a Legal Support Leader. I have been employed with Equifax for more than 20 years.

3.      I have personal knowledge of the facts stated herein based on my work experiences at Equifax and my review of documents and records kept by Equifax in the ordinary course of its business as a consumer reporting agency, including Equifax's records concerning the credit files of Plaintiff Troy Williams' credit file. I have reviewed Mr. Williams' Supplemental Amended Complaint and am generally familiar with the allegations made therein.

4.      I am authorized by Equifax to provide this declaration.

**I.      EQUIFAX IS A CONSUMER REPORTING AGENCY.**

5.      Equifax is a consumer reporting agency ("CRA") as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

6.      As such, it gathers information about consumers from various sources, including banks, collection agencies, and court records, which it uses to create credit files on more than 200 million consumers in the United States.

7.      Equifax uses those files to prepare consumer reports for use by its subscribers in evaluating the potential credit risk of consumers, among other permissible purposes.

8.      Equifax maintains a credit file for Mr. Williams.

## II.   EQUIFAX'S REASONABLE PROCEDURES FOR ASSURING MAXIMUM POSSIBLE ACCURACY AND HANDLING CONSUMER DISPUTES

9.      Equifax maintains detailed procedures designed to assure maximum possible accuracy of the information it reports to its subscribers regarding consumers and to correct errors that are brought to its attention via consumer disputes.

10.     Equifax accepts information only from those sources of information that it has determined are reasonably reliable based upon Equifax's own investigation, the source's reputation in the community, and/or Equifax's longstanding business relationships with it.

11.     In the case of public records, Equifax utilizes the services of an industry leading public records vendor to obtain public records for it from courthouses and other sources.

12.     Equifax maintains detailed policies and procedures designed to assure that it conducts reasonable reinvestigations of information disputed by consumers as inaccurate.

13.     A consumer may contact Equifax to request a consumer disclosure or dispute information reporting in his or her credit file by telephone, mail, or through an Internet portal on Equifax's website.

14.     Upon receipt of a dispute, and after locating the consumer's credit file, Equifax opens an Automated Consumer Interview System ("ACIS") case that tracks the process of the reinvestigation.

15.     Equifax then reviews and considers all relevant information including documentation, if any, provided by the consumer and reviews the contents of the consumer's credit file.

16.     If Equifax is able to make updates based on the information it has, it will do so.

17.     That may occur, for example, when the consumer has changed a name or address and provides Equifax with sufficient proof of the change to allow it to add the name or address to the credit file.

18.     Another example is that Equifax will remove a former address disputed by a consumer, even without requiring the consumer to provide any additional identifying information demonstrating that the address is no longer correct.

19.     If further investigation is required, Equifax notifies the source of the account information (referred to as the "data furnisher") of the consumer's dispute, identifies the nature of the consumer's dispute, and includes the consumer's account information as it then appears in Equifax's credit file.

20.     These communications are generally made through a process wherein Equifax transmits a form by electronic mail called an Automated Consumer Dispute Verification ("ACDV").

21.     The ACDV electronic mail process allows consumer reporting agencies to communicate with data furnishers through use of an array of pre-defined codes and narrative phrases.

22.     This standardized process enhances consistency and reduces misunderstandings, which otherwise would be significant given the large number of disputes processed by Equifax and the other consumer reporting agencies every day.

23.    When the data furnisher receives the dispute from Equifax, it is generally required, both by its contract with Equifax and by the FCRA, to conduct its own investigation and report the results back to Equifax.

24.    If the data furnisher advises Equifax to delete or otherwise update the account information, then Equifax takes the necessary action and notifies the consumer.

25.    Upon completion of the reinvestigation, Equifax sends the consumer the results along with a summary of the consumer's rights under the FCRA, additional steps the consumer may take, and a description of the procedures used to reinvestigate the dispute.

26.    The individuals that handle consumer disputes must undergo a training process whereby they are trained on the reinvestigation policies and procedures created by Equifax.

27.    First, the individuals must participate in classroom instruction.

28.    Upon completion of the classroom instruction, each participant is required to pass a competency test.

29.    A participant who achieves a passing grade next receives on-the-job training as they handle consumer disputes.

## III.    MR. WILLIAMS' EQUIFAX CREDIT FILE AND DISPUTES

30.    Mr. Williams' Equifax credit file contained a Judgment in the amount of $4,078 in favor of Capital One Bank USA N.A. and against Mr. Williams (the "Judgment").

31.    Equifax's records show that it was contacted by Mr. Williams two times concerning the Judgment: (1) on June 10, 2017, Equifax received a letter from Mr. Williams disputing the Capital One Bank USA N.A. account and requesting to see the original consumer contract between Capital One and him with his signature on it; and (2) on August 17, 2017, Equifax received "Plaintiff's Affidavit" recounting the history of his first dispute letter.

32.     Other than the communications on the two dates listed above, Equifax has no record of any other communications from Mr. Williams disputing the Judgment prior to filing this lawsuit.

33.     Equifax inadvertently did not respond to Mr. Williams' first dispute. By the time Equifax received his second dispute on August 18, 2017, the Judgment was no longer reporting on his credit file.

## IV.   EQUIFAX DID NOT PREPARE ANY CONSUMER REPORTS CONCERNING MR. WILLIAMS

34.     On July 6, 13, and 28, 2017 and on October 19, 2017, Equifax received requests from Credit Karma, Inc. ("Credit Karma") for a copy of Mr. William's credit disclosure.

35.     Equifax has an agreement with Credit Karma may request copies of a consumer's disclosure for the purposes of providing it to the consumer. It is Equifax's understanding that Credit Karma is not in the business of issuing credit to consumers.

36.     Pursuant to its relationship with Credit Karma, Inc., Equifax provided it with Mr. Williams' credit file disclosures in response to those inquiries.

37.     A "consumer report" is different from a "consumer disclosure" (also known as a credit file, credit report, or credit disclosure) that is provided to a consumer as a record of his own credit file. "Consumer reports" are generated by a consumer reporting agency and delivered to a third party such as an employer, insurer, or lender, for use in deciding whether the consumer is eligible for credit or for other purposes.

38.     Equifax did not provide Mr. William's consumer report to any third parties for the purposes of credit, employment, or insurance, at any time between July 20, 2015, and October 17, 2017.

39.     Further, Equifax did not prepare any consumer reports concerning Mr. Williams from July 20, 2015, through October 17, 2017.

40.     Equifax did not act to willfully harm Mr. Williams or his credit file.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 9th day of April, 2018, at Atlanta, Georgia.

By: _____

Celestina Gobin

6