FILED
2018 Apr-20  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

Troy T. Williams v. Equifax Information Services LLC
Case No. 5:17-cv-01216-CLS

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

## April 19th, 2018

This document relates to:

**Troy T. Williams,** an
Individual                                      :
                                                :
                          **CaseNo. 5:17-cv-01216-CLS**
*Plaintiff,*                    : PLAINTIFF DEMANDS TRIAL
                                : BY JURY
V.                              :
                                :
                                :

**Equifax Information Services LLC.**
*Defendant*

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO (ECF 102)

---

**Comes now**, Plaintiff, Williams, pursuant to Fed.R.Civ.P. Rule 56, moves for summary judgment against defendant, Equifax Information Services LLC., hereinafter known as ["Equifax"]. A party may move for summary judgment, identifying each claim or defense---or the part of each claim or defense---on which summary judgment is sought.

Troy T. Williams v. Equifax Information Service LLC.
**Case No. 5:17-cv-01216-CLS**

# TABLE OF CONTENTS:
## In compliance with L.R.

TABLE OF CONTENTS…………….……………….. …………………………………….i

TABLEOFAUTHORITIES…………………………………………………………………..ii

I.      REPLY STATEMENT………….………….…………………….......................2,3

II.     MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT
………………………………………………………………………………….3,4

III.    ARGUMENT AND AUTHORITIES……………………………………………….4

   A. Plaintiff Apologizes To The Court For All Scrivenor Errors, Errors That State
      Equifax      Reported      The      Civil      Claim      Judgment
      …………………………………………………………………………………4

   B. Equifax Admitted Violating § 1681i(a)(1)(A) and § 1681i(a)(1)(B), Plaintiff
      Claims Equifax Admittance Is Not A Harmless Human Error And Equifax's
      Opposition Thereto Should Be Denied……………………………………5,6,7

   C. The FCRA Requires A CRA To Conduct A Meaningful And Independent
      Investigation…………………………………………………………………7,8,9

   D. If Equifax Never Conducted A Re-Investigation, Then They Parroted Their
      Creditor-Customer And Their Opposition Thereto Cannot Be Deemed Harmless
      Human Error And Should Be Denied……………………………….9,10,11,12

   E. Plaintiff Claim For Willful Violation Of FCRA And Emotional Distress Should
      Be Granted And Equifax Opposition Thereto Should Be Denied…...12,13,14,15

   F. Rooker-Feldman Doctrine Does Not Bar Williams Claims And Equifax's
      Opposition Thereto Should Be Denied…………………………………………...16

   G. Consumer Credit Report And Credit Report Are Synonymous…………….16,17

IV.     CONCLUSION……………………………………………………………..............17

# TABLE OF AUTHORITIES:
## In Compliance With L.R.

**Cases:**                                                                          **Page**

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997)………..………………………....10

Edeh v. Midland Credit Mgmt.Inc., No.09-1706, 748 F. Supp. 2d. 1030, 2010 U.S. Dist Lexis
103888, 2010 WL 3893604 at *10 (D.Minn. 2010)……………………………………………..15

Henson v. CSC Credit Servs., 29 F. 3d. 280 (7th Cir. 1994)……………………………………..11

*In Re Equifax,Inc. 96 F.T.C. 1045, 1065(1980), rev'd in part on other grounds, 678 F. 2d. 1047
(11th Cir. 1982)… … … … … … … … … … … … … … … … … …..…………………………………11,12*

In Fahey v Experian Info.Solutions, Inc., 571 F.Supp. 2d. 1082 (E.D. Mo. 2008)……………..14

Licup. Aff. Ex.A. at *133:4-6 Docket #26………………………………………………………15

Meyer v. F.I.A. Card Servs., N.A. 780 F. Supp. 2d. 879, 884-85 (D.Minn. 2011)……………...15

McKinley v. CSC Credit Servs.Inc., No.05-2340, 2007 U.S. Dist. Lexis 3428, 2007 WL
1412555, at *5 (D.Minn. 2007)…………………………………………………………………15

*Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d. 829,834 (8th Cir. 1976)…………......................14

*Rogers v. Discover Bank et.al.* 2:13-cv-00124-HGD………………………………………………..6

*St.Charles Foods v. America's Favorite Chicken Co.,* 198 F. 3d. 815, 819 (11th Cir. 1999)….....3

*Whatley v. CAN Ins. Co.,* 189 F.3d. 1310, 1313 (11th Cir. 1999)…………………………....…3

Zean v. Unifund C.C.R. Partners, No.08-1091, 2009 U.S. Dist. Lexis 69707, 2009 WL 2461723
at *2-3 (D.Minn.August 10, 2009)……………………………………………………………15


**Statutes:**

**FCRA: Fair Credit Reporting Act Pub.L. 91-508 ,84 Stat.
1114**…..………………….……………………………………………………..2,3,4,6,7,12,13,14,16

**15 U.S.C. § 1681i(a)(1)(A)……….**……………………………………………………...2,5,6,8,10

15 U.S.C. § 1681i(a)(2)(A)……………………………..…………………………………....9
15 U.S.C. § 1681i(a)(2)(A)(3)……………………………..…………………………………..9

15 U.S.C. § 1681i(a)(2)(C)…………………………………………..……………………....9

15 U.S.C. § 1681i(a)(4)……………………………………..……………………………....9

15 U.S.C. § 1681i(a)(6)(A)**……**………..………………………………………………...…2

15 U.S.C. § 1681i(a)(1)(B)**……**…………………………..…………………………….…5,6

15 U.S.C. § 1681e(b)...............................................……….……...…………………….…6

15 U.S.C. § 1681h(e)…………………………………………..….……………...…..…6

15 U.S.C. § 1681n.…………………………………………………………………......12

15 U.S.C. § 1681o.…………………………………………………………………..…..12

## Other Authorities:

**Comm.Rep**.accompanying S.650., S.Rep.No.185, 104th Cong. 1st. Sess., at 43 (Dec.14, 1995)…………………………………………………………………………………………..12

 Fed. R. Civ. P. Rule 56…………..…………………………………………………....1

Fed. R. Civ. P. Rule 8………………………………..…………………………………...3,10

 Fed. R. Civ. P. Rule 1…………………………………………………………………..…3

## Definitions:

Black's Law Dic. 6th Ed. of the word: harmless………………………………………..5

Black's Law Dic. 6th Ed. of the word: human……………………………………………5

Black's Law Dic. 6th Ed. of the word: error………………………………………………5

## I.   <u>Reply's Statement:</u>

As stated in Plaintiff's Motion for Summary Judgment (ECF 102) p.2 ¶ 25, Plaintiff Williams brings forth claims against Equifax for willful and negligent violation of the Fair Credit Reporting Act 15 U.S.C. § 1681 et.seq. respectively. Williams asserts that he has sent a dispute letter for "re-investigation" purposes as it pertains to Capital One Bank N.A. "civil claim judgment" in the amount of $4,078.83, in which Defendant in "answering" Williams' discovery request under "Admission" (ECF 101 Exh B) and in answering the Motion for Summary Judgment (ECF 103) under "Statement of Facts" has "admitted" to receiving. While Equifax "admits" to receiving the 609(a)(1)(A) letter now, it did not do so in answering Williams Original Complaint (ECF 1, 24, 25). Upon submission of Plaintiff's Second Amended Complaint (ECF 57), Williams claims the amount of "$4,078.83 is being reported "inaccurately" for lack of the original signed consumer contract and/or signed effective card-holder agreement copyrighted 2004 because the "amount" contains post-judgment, fees and interest.

Plaintiff did not receive results of the "re-investigation" within the 30days pursuant to §1681i(a)(6)(A) as directed, stated and found under Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(1)(A). To date, Defendant, Equifax "admits" not conducting a reasonable investigation and reporting the results in 30 days to

Williams in answering his Motion for Summary Judgment, although they did not admit to (ECF 67) while answering Williams Second Amendment Complaint (ECF 57) and Motion to Strike (ECF 73) defendant's non-compliance with FCRA and parts sub-parts that apply as it pertains to Plaintiff.

Pursuant to Fed. R. Civ. P. Rule 8, a party that is required to answer a complaint must admit to the allegation that is true. In doing so, the defendant helps facilitate a fair, just and speedy trial pursuant to Fed. R. Civ. P. Rule 1. The Court Record reveals and proves that Equifax failed to comply with not only Fed. R. Civ. P., but Court Orders too that will be brought out more fully in this reply.

## II.   **Memorandum Of Law For Summary Judgment:**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999). The court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 819 (11th Cir. 1999).

Based upon all evidence [*interrogatories, admissions, affidavits, etc.*] provided thus far, the Defendant has failed to establish that Defendant did not

violate any provision of the "FCRA" or Fair Credit Reporting Act and parts and sub-parts that apply to this case.

### III.    **Argument And Authorities:**

#### A. Plaintiff Apologizes To The Court For All Scrivenor Errors, Errors That State Equifax Reported The Civil Claim Judgment.

Plaintiff Williams apologizes to this Court concerning his submission of his Motion for Summary Judgment (ECF 102) that contained scrivener errors. Williams claims excusable neglect by way of inadvertence by stating in the content page of his Motion for Summary Judgment that, Equifax reported the "civil claim judgment" in favor of Capital One Bank(USA)N.A. instead of the "furnisher of information".

The Court Record will reflect since the commencement of this lawsuit, that Williams has not indicated on any other occasion by way of pleadings that Equifax is the furnisher of information. Upon correction, Plaintiff should have stated that "Equifax" displayed and/or published the item in dispute "civil claim judgment" in favor of Capital One Bank(USA)N.A. that was provided by the furnisher of information. Williams' motion should move forward for the interest of equity and justice.

#### B. Equifax Admitted Violating § 1681i(a)(1)(A) and § 1681i(a)(1)(B), Plaintiff Claims Equifax Admittance Is Not A Harmless Human Error And Equifax's Opposition Thereto Should Be Denied.

Black's Law Dic. 6th Ed..states and defines harmless as : a mistake, some unintentional act, omission, arising from ignorance, surprise, imposition or misplaced confidence.   Black's Law Dic. 6[th]Ed.. defines human as: a natural person, may include organizations, partnerships, legal representatives. Black's Law Dic. 6[th]Ed.. defines "error" as mistaken judgment or incorrect belief as to the existence or effect of a matter or a false or misplaced conception or application of the law.

In light of Equifax's use of the words "harmless human error" to down play its non-compliance to the Fair Credit Reporting Act § 1681i(a)(1)(A), Equifax has failed to explain and provide evidence that its' outsourced employees of Serco (located in India; ECF 101 See Leonard Bennett Testimony Exh- D) were acting out of ignorance, surprise, imposition or misplaced confidence. Nor has defendant cited and provided evidence that the delay in not complying with § 1681i(a)(1)(A) was due to the following : (1) an act of God (2) adverse weather (3) electrical power outage (4) computer servers down (5) computer virus (6) they were hacked. None of these situations and/or similar situations were cited and proven by evidence as to cause the delay in conducting the reasonable investigation and reporting the results thereof to "consumer", Williams, in a timely fashion of 30 days as it relates to FCRA and parts and sub-parts that apply. Nor did Counsel Reid communicate that the United States Postal Service "USPS" experienced the

same and/or similar situation as to contribute to any delay on Equifax's behalf. A delay that stems over a two month time period without notice sent by defendant (as to the cause of delay, nor requesting more time pursuant to § 1681i(a)(1)(B)).Ironically, now, Equifax "admits" in answering Plaintiff's Motion for Summary Judgment (ECF 103; and See Ans to Exh B (ECF 101)) that they did not comply with §1681i(a)(1)(A) and § 1681i(a)(1)(B). Furthermore, and interestingly enough, Equifax now admits in its' "answers" to Williams "Admissions" (ECF 101 Exh B), # 62 p. 24, Equifax Information Services LLC., at any-time while conducting business in the State of Alabama has been sued prior to Williams compliant for 1681i(a)(1)(A), and/or 1681i(a)(1)(B), and/or 1681e(b), and/or 1681h(e).( ECF 101 See Exh-B) and that they have been sued by Charles Rogers (ECF 73)Case 2:13-cv-01124-HGD. In Rogers v. Discover Bank et. al. Case 2:13-cv-01124-HGD Equifax replied to Williams' "Admission" (ECF 101 Exh B) by stating : **the referenced complaint speaks for itself.** Rogers alleged that Equifax violated § 1681i(a)(1)(A) and parked the account.*Equifax settled out of court in the Rogers v. Discover Bank et. al.* Out of convenience and to mitigate damages, Equifax would like to have this Court believe that Williams' case can be summed up as just a "harmless human error"; yet in reality, it is not. Williams has been harmed by such reckless and careless behavior committed by Equifax. By all intents and purposes, Equifax has demonstrated a pattern or modes operandi of

blatant disregard for FCRA, Federal Rules of Civic Procedure and Court Orders (ECF 44 p.2, & 74). In other words, Equifax has demonstrated that they are a **"repeat-offender"** of being non-compliant with FCRA and parts and sub-parts that apply in this case.

### C. The FCRA Requires A CRA To Conduct A Meaningful And Independent Investigation.

In answering Plaintiff Williams Admission #43 p. 17, Equifax **"admits"** that they timely review and act upon **all** such ACDV's, AUD's and notifications as required by FCRA.( ECF 101 See Exh-B).

According to the Equifax own Manual (Data Furnisher Guide) p. 6 (ECF 101 Exh-E)  which states, "ACDVs initiated by a CRA on behalf of a consumer are routed to the appropriate Data Furnisher based on the CRA and subscriber code affiliations indicated by the DF. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history. If an account is modified or deleted, **carbon copies** are sent to each CRA with whom the DF has a reporting relationship. In other words, Equifax was aware that the item reported "deleted" from Experian. In addition, the same item was disputed concerning TransUnion and they received a dispute letter dated June 17th, 2017, received on June 24th, 2017 via USPS Certified Mail (ECF 101See Exh-I), and their results came back on June 30th, 2017 showing "delete" status (ECF 58).These actions

taken by the CRA's alone, apparently indicate that the "civil claim judgment" was being reported inaccurately.

Each Consumer Reporting Agency, like Equifax, Experian and TransUnion, use the E-Oscar System. (ECF 101 See Exh-D, F).

On or around June 16th 2017, Equifax sent what is known as a "ACDV"(EIS- Williams 000001) by way of their "ACIS" to the "furnisher" of information as required by FCRA. Equifax re-investigation came back from the "furnisher" as "verified" and assigned a status of "updated" on June 21st, 2017, *reflecting "civil claim judgment" in favor of Capital One Bank N.A. in the amount of $4,078.83.* In other words, the item remains reported as is. However, Equifax "admits" they failed to conduct proper investigation. Simultaneously,Experian, a consumer reporting agency, contacted the "furnisher" upon receipt of dispute letter dated June 3rd,2017, received June13[th], 2017 via USPS Certified Mail (See Exh-H), which makes reference to (civil claim judgment in favor of Capital One Bank N.A.) and the results came back**"deleted"** on June 21st, 2017 (ECF 58).

Section 611(a) of the FCRA (15 U.S.C. §1681i(a)) imposes on a CRA, like Equifax, upon receipt of a consumer's dispute the following duties: (1)[T]he agency shall conduct a reasonable re-investigation to determine whether the disputed information is accurate and record the current status of the disputed

information, or delete the item from the file § 611(a)(2)(A) (2) The notice [that the CRA, like Equifax, provides the creditor/furnisher after receiving the consumer's dispute] shall include all relevant information regarding the dispute that the agency has received from the consumer § 611(a)(2)(A) (3) The consumer reporting agency shall review and consider all relevant information submitted by the consumer § 611(a)(4) (5)The CRA, like Equifax, must immediately remove disputed information if it determines that the information that is the subject of the re-investigation is […] inaccurate or incomplete or […] cannot be verified § 611(a)(2)(C) and § 611(a)(5) (ECF 101.. See Leonard Bennett Testimony Exh D).

Equifax's claim of " harmless human error" is simply "absurd" and for the sake of equity and justice, Williams claim should move forward and be granted.

> D. <u>If Equifax Never Conducted A Re-Investigation, Then They Parroted Their Creditor-Customer And Their Opposition Thereto Cannot Be Deemed Harmless Human Error And Should Be Denied.</u>

Equifax has indicated in their "opposition" to Williams' Motion For Summary Judgment (ECF 103, *Id* ¶ 49, 50, 51, 52) that they maintain reasonable procedures for assuring maximum possible accuracy and handling consumer disputes. Equifax has also indicated in answering Plaintiff's "Admission's" (ECF 101-102 Exh B #52 p.20) that they Equifax Information Services LLC., in answering Plaintiff Williams complaint p. 13 ¶ 49 (ECF 57) pursuant to Fed. R.

Civ. P. Rule 8, Equifax **"denied"** that it is obligated to rely upon whatever the public records state about a "consumer". *Equifax states that its answer speaks for itself.*

The most critical provision in § 611(a) are the mandate that a CRA, like Equifax, conduct a "reasonable" re-investigation and the requirement that the CRA, like Equifax, "review and consider" the information provided by the consumer. These provisions impose on a CRA, like Equifax, the obligation to exercise independent discretion to evaluate the "validity" of a consumer's dispute, like Williams. The leading case considering the qualitative standard for a re-investigation is **Cushman v. TransUnion**. The Third Circuit stated in this 1997 decision:

> "The "grave responsibility[y] imposed by [§ 611(a)] must consist of something more than merely parroting information received from other sources. Therefore, a "re-investigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute. (emphasis added)(Cushman v. TransUnion Corp., 115 F.3d. 220 (3rd Cir. 1997)(ECF 101 Exh D "Leonard Bennett's Testimony" p.20).

When confronted with this decision in litigation, CRA attorneys uniformly make two responses: (1) they routinely claim that Congress implicitly repealed the requirement of an independent investigation when it added the FCRA's furnisher liability section in 1996 (2) they assert that their procedures do not defer entirely to the creditor and constitute something more than mere "parroting" of their

customer's response. Keep in mind, Equifax has "admitted" that they have a "subscriber agreement" with Capital One Bank(USA)N.A. and that Capital One Bank(USA)N.A. is a "data-furnisher"(ECF 101-102 Exh B).

Underlying the "reasonableness' of a CRA, like Equifax, compliance with its FCRA "accuracy" duties is a two step balancing test used expressly or implicitly  by nearly every court to apply the statute. The balancing test was formulated in 1994 by the Seventh Circuit in Henson v. CSC Credit Services:

> "Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer" (See Henson v. CSC Credit Servs., 29 F.3d. 280 (7th Cir. 1994).

Ironically enough, Equifax "denied" the aforementioned above (ECF 101 Exh B, D) in answering Williams' admission discovery. **The reality of this case is...Equifax removed and/or deleted the item in dispute because they could not "verify" the original signed consumer contract or applicable signed card-holder agreement, therefore reporting "inaccurate" information. FCRA makes clear "any" information that is "inaccurate".**The consumer's right, like Williams, to dispute information contained in a consumer report is an important safeguard necessary to ensure "accuracy" (See In re: Equifax, Inc., 96 F.T.C. 1045, 1065 (1980), rev'd in part on other grounds, 678 F.2d. 1047 (11th Cir. 1982). The

original intent of the FCRA's re-investigation requirements and their societal importance were plainly stated by Senator Proxmire when the Act was first introduced in the Senate. (Comm. Rep. accompanying S.650, S.Rep. No. 185, 104th Cong. 1st Sess., at 43 (Dec. 14, 1995).

Equifax indicated in their "opposition" (ECF 103) that they received two disputes from Plaintiff (1) in or around 2014-5 (results; verified) (2) in or around 2017 (results; updated and/or verified). By logic and default, if Equifax has been reporting the item in dispute, "civil claim judgment" accurately since 2011 and had six months to continue to publish, regardless of commencement of suit, then again, why did they delete and/or remove the item (ECF 58).

> E. <u>Plaintiff Claim For Willful Violation Of FCRA And Emotional Distress Should Be Granted And Equifax Opposition Thereto Should Be Denied.</u>

Williams claims excusable neglect by way of inadvertence, "ignorance" really, as a pro se' for not expounding on how Equifax willfully violated the FCRA and caused Plaintiff "emotional distress" as indicated in his complaint (ECF 57).Equifax own records (ECF 101, Exh C) indicate that they purposefully intended not to send Williams the investigation results, which is a "willful" act, negligent at the very least therefore § 1681n and § 1681o applies in this case. In other words, Equifax has an incentive not to send the results because they own

more than 10% stock of Capital One Financial Corporation (COF)(See Exh AA), the parent company of Capital One Bank (USA)N.A. Equifax Information Services LLC., which is a subsidiary of Equifax Inc.,(*https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId =26580113*) is making profit on this entire process (See 101 Leonard Bennett Testimony Exh D) to the harm and detriment of consumer[s], like Williams. Equifax Inc. and each of its subsidiaries that is a "Significant Subsidiary" within the meaning of such term as defined in Rule 1-02 of RegulationS-X of the Commission (the "Significant Subsidiaries") is validly existing as a corporation organized under the laws of the United States).Capital One Financial Corp. own annual report indicates that an "entity" owning more than 10% of stock is equated to having a "controlling interest" in the company(See Exh-CC). The incentive for Equifax not to comply with FCRA and parts and sub-parts that apply to this case is now clear. Williams' case is not the norm, because Equifax relies on a consumer not to file a lawsuit, like Williams, in which he has incurred immense expense physically, emotionally and financially. Equifax banks on a consumer not having the time, money, resources and resilience to get their credit concerns addressed correctly. **If Equifax was reporting the "item" in dispute accurately, then why did they delete and/or remove the "civil claim judgment" reported (ECF 58). Hitting the delete button does not give Equifax or the CRA's a get out of**

**FCRA Free Card or Pass to stave off damages. Otherwise, all that Equifax and the CRA's have to do is delete the item and never have to pay damages, thus making FCRA obsolete.**

By Equifax being non-compliant with the FCRA and part and sub-parts that apply in this case, the mere fact that an item is being reported inaccurately has caused emotional distress experienced by Williams as he asserts "he suffered depression and irritability, became uncharacteristically withdrawn, and suffered physical ailments" as a result of defendant's reporting inaccurate information about him as mentioned in his complaint (ECF 57)(See*In Fahey v. Experian Info. Solutions, Inc.,* 571 F. Supp. 2d 1082 (E.D. Mo. 2008); *Millstone v. O'Hanlon Reports, Inc.,* 528 F.2d. 829,834 (8th Cir. 1976).Plaintiff claims he feels violated, devastated, and drained for experiencing feelings of guilt and responsibility because his family has been burdened by his credit concerns and has had to accommodate and assist Williams in addressing this matter emotionally, physically(providing shelter) and financially, which can be verified by an affidavit(See Exh BB)("courts have utilized a middle ground at the summary judgment stage, "requiring that, when a plaintiff's testimony is the only evidence of emotional damages, the plaintiff must sufficiently explain the circumstances surrounding his or her emotional injury and may not rely on conclusory

statements." Zean, 2009 U.S. Dist. LEXIS 69707, 2009 WL 2461723, at *2-3(Utilizing the middle ground of Zean, Meyer has pointed out no other evidence of her emotional distress than her "humiliation" over having to repeat her story and not being believed. (LicupAff., Ex. A at 133:4-6, Docket No. 26.) Under the more lenient standard of Edeh, that characterizes emotional distress as "highly subjective," Meyer's evidence would suffice. As a result, while the Court is skeptical about this portion of Meyer's claim, the Court finds that the emotional distress Meyer has alleged is sufficient to survive summary judgment.*Meyer v. F.I.A. Card Servs., N.A.*, 780 F. Supp. 2d 879, 884-85 (D. Minn. 2011).

Even though this Court is districted under the Eleventh Circuit, most courts within the Eighth Circuit have found that emotional distress qualifies as actual damages. S*ee, e.g., Edeh v. Midland Credit Mgmt., Inc.,* No. 09-1706, 748 F. Supp. 2d 1030, 2010 U.S. Dist. LEXIS 103888, 2010 WL 3893604, at *10 (D. Minn. 2010); *McKinley v. CSC Credit Servs., Inc.,* No. 05-2340, 2007 U.S. Dist. LEXIS 34528, 2007 WL 1412555, at *5 (D. Minn. 2007); *Zean v. Unifund CCR Partners*, No. 08-1091, 2009 U.S. Dist. LEXIS 69707, 2009 WL 2461723, at *2-3 (D. Minn. Aug. 10, 2009) ("Relief under the FCRA may also include out-of-pocket damages for emotional distress, even when no out-of-pocket damages have been sustained."

Williams claim[s] should move forward and be granted.

### F. Rooker-Feldman Doctrine Does Not Bar Williams Claims And Equifax's Opposition Thereto Should Be Denied.

The issue of Rooker-Feldman has already been decided by this Court. See (ECF 84). The Court made clear that Williams' FCRA Claims are not "inextricably intertwined" with the State-Court Judgment therefore making Equifax's argument and defense "moot", nor is Williams asking Equifax to be a tribunal.

### G. Consumer Credit Report And Credit Report Are Synonymous

Equifax is once again is trying to evade their responsibility for being non-compliant with FCRA and parts and sub-parts that apply in this case by now trying to deceive the court as to consumer credit report and credit report are somehow different.

In § 603(d)(1), in general, the term "consumer report" means **any** written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility. In §603(g), the term "file," when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored. In other words, a consumer file

is that which is contained within the consumer's credit report. There is no difference. Counsel Reid argument at best can be equated to "gossamer" that relates to a house of straws that is built on sand.

## CONCLUSION:

**Wherefore,** Equifax "opposition" for Motion For Summary Judgment should be denied and Williams should be granted summary judgment as stated and incorporated above.

Respectfully submitted,

/s/Troy T. Williams
(Pro Se)
PO Box 464
Harvest, Alabama
256-749-2614
256-829-8246 Alt#
twothe1t1will@gmail.com
In Proper Person

## Certificate of Interested Parties:

April 19th, 2018

I, Troy T. Williams, do solemnly swear that the foregoing is true and correct to the best of my knowledge and that this *"Plaintiff's Reply To Equifax's Opposition* is in compliance with **with Local Court Rules and Fed.R.Civ.P.".**I have sent the following parties a copy of my brief via United States Postal Service and/or by email..*If* you have any questions please contact me at twothe1t1will@gmail.com. Thank you.

**Equifax Information Services LLC.**
**Attn: Kirkland E Reid**
JONES WALKER LLP
11 N. Water Street
Suite 1200
Mobile, AL 36602
251-432-1414
Fax: 251-439-7358
Email: kreid@joneswalker.com
*ATTORNEY TO BE NOTICED*

Respectfully submitted,

/s/Troy T. Williams
(Pro Se)
PO Box 464
Harvest, Alabama
256-749-2614
256-829-8246 Alt#
twothe1t1will@gmail.com
In Proper Person

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

## April 19th, 2018

This document relates to:

**Troy T. Williams,** an
Individual

*Plaintiff,*

V.

:
:
**CaseNo. 5:17-cv-01216-CLS**
: PLAINTIFF DEMANDS TRIAL
: BY JURY
:
:
:

**Equifax Information Services LLC.**
*Defendant*

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO (ECF 102)

---

## COVER-PAGE

## EXH-AA

## ELEVENTH CIRCUIT FILING CONTAINING CAPITAL ONE BANK(USA)N.A. DISCLOSURE STATEMENT STATING EQUIFAX INC. OWNS MORE THAN 10% STOCK IN CAPITAL ONE BANK(USA)N.A., SUBSIDIARY OF CAPITAL ONE FINANCIAL CORP.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**TROY WILLIAMS,**

**Plaintiff,**

**Appeal No. 18-10191-DD**

**v.**

**CAPITAL ONE BANK (USA), N.A,**          **District Court Docket No.:**
**ET AL**                                  **5:17-cv-01216-CLS**

**Defendants.**

_____/

## APPELLEE CAPITAL ONE BANK (USA), N.A.'S RESPONSE IN OPPOSITION TO MOTION TO RECONSIDER, MODIFY, ALTER OR AMEND

## APPELLEE CAPITAL ONE BANK (USA), N.A.'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT AS REQUIRED BY FRAP 26.1 AND 11TH CIR. R. 26.1-1

Appellee Capital One Bank (USA), N.A. files the following Certificate of

Interested Persons and Corporate Disclosure Statement, stating as follows:

**The name of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to any party in the case:**

Burr & Forman LLP

Capital One Bank (USA), N.A.

Capital One Financial Corporation (NYSE: COF)

Equifax Inc. (EFX), Owns more than 10% of stock of Defendant/Appellee

Equifax Information Services LLC

King & Spalding, LLP

Love, J. Anthony

Reid, Kirkland E.

Equifax Information Services, LLC

Johnson, Hon. Herman N., Jr. – United States Magistrate Judge

Smith, Hon. C. Lynwood, Jr. – United States District Judge

Threadcraft, Joshua H.

Williams, Troy T.

C - 1 of 1

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

## April 19th, 2018

This document relates to:

**Troy T. Williams,** an
Individual                                    :
                                              :
                                              **CaseNo. 5:17-cv-01216-CLS**
*Plaintiff,*                                  : PLAINTIFF DEMANDS TRIAL
                                              : BY JURY
V.                                            :
                                              :
                                              :

**Equifax Information Services LLC.**
*Defendant*

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO (ECF 102)

---

## COVER-PAGE

## EXH-BB

## AFFIDAVIT[S]

1. ANITA C. ROWE
2. WILLIAM D. WILLIAMS
3. Audley L. Crayton

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

## April 19th, 2018

This document relates to:

| | |
|---|---|
| **Troy T. Williams,** an Individual | : |
| | : |
| | **Case No. 5:17-cv-01216-CLS** |
| *Plaintiff,* | : PLAINTIFF DEMANDS TRIAL |
| | : BY JURY |
| V. | : |
| | : |
| | : |
| **Equifax Information Services LLC.** | |
| *Defendant* | |

## AFFIDAVIT

**Comes now**, Anita C. Rowe, to above named action, of Toney, in Madison Alabama, MAKE OATH AND SAY THAT:

I do solemnly swear by all laws and statutes that apply, that I, Anita C. Rowe "affiant":

1. I am Anita C. Rowe.

1. I am Anita C. Rowe.

2. I am the Aunt of said party the Plaintiff, Troy T. Williams

3. I have personal knowledge of the facts contained in this affidavit.

4. Plaintiff Williams presents this motion for a good cause, that cause being for the interest of equity and justice that any reasonable man or woman would confer that Williams has incurred physical, emotional and financial injury .

5. I can attest that Plaintiff, Williams, since and prior to the filing of this lawsuit had to rely and reside at my place of residence due to his financial hardship concerning what appears to be complicated issues surrounding his credit and credit report.

6. I can attest that Plaintiff Williams since commencement of this lawsuit has appeared and comes across as withdrawn, not enjoying life and liberty that a reasonable person might consider.

7. I can attest that Plaintiff Williams has incurred physical changes that include loss of weight, unknown sickness in the form of head-aches, stomach problems that seem to occur on a frequent basis since commencement of this suit.

8. I can attest that Plaintiff Williams has incurred extreme financial hardship.

In accords with **28 U.S.C. § 1746**, Anita C. Rowe declares under penalty and perjury the aforementioned above is true and correct to the best of her knowledge.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

## April 19th, 2018

This document relates to:

| | |
|---|---|
| **Troy T. Williams,** an Individual | : |
| | : |
| | **Case No. 5:17-cv-01216-CLS** |
| *Plaintiff,* | : PLAINTIFF DEMANDS TRIAL |
| | : BY JURY |
| V. | : |
| | : |
| | : |
| **Equifax Information Services LLC.** *Defendant* | |

---

## AFFIDAVIT

---

**Comes now**, William D. Williams, Jr. to above named action, in Huntsville Alabama, MAKE OATH AND SAY THAT:

I do solemnly swear by all laws and statutes that apply, that I, William D. Williams, Jr. "affiant":

1. I am William D. Williams, Jr.

2. I am the Father of said party the Plaintiff, Troy T. Williams

3. I have personal knowledge of the facts contained in this affidavit.

4. Plaintiff Williams presents this motion for a good cause, that cause being for the interest of equity and justice that any reasonable man or woman would confer that Williams has incurred physical, emotional and financial injury concerning this lawsuit .

5. I can attest that Plaintiff, Williams, since and prior to the filing of this lawsuit had to rely on my financial and transportation assistance  concerning what appears to be complicated issues surrounding his credit and credit report.

6. I can attest that since the commencement of this suit, that Plaintiff Williams lost his personal vehicle due to circumstances beyond his control and I provided the use of my personal vehicle for his benefit concerning this matter and his day to day affairs.

7. I can attest since the commencement of this lawsuit that Plaintiff Williams has had to travel round trip of approximately 40 miles from where he resides (in Toney, AL) to the Courthouse and Law Library to address this matter on a frequent basis.

8. I can attest that Plaintiff Williams since commencement of this lawsuit has appeared and comes across as withdrawn, not enjoying life and liberty that a reasonable person might consider.

9. I can attest that Plaintiff Williams has incurred physical changes that include loss of weight, unknown sickness in the form of head-aches, stomach problems that seem to occur on a frequent basis since commencement of this suit.

10. I can attest that Plaintiff Williams has incurred extreme financial hardship.

In accords with **28 U.S.C. § 1746**, William D. Williams, Jr. declares under penalty and perjury the aforementioned above is true and correct to the best of his knowledge.

William D. Williams, Jr.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

## April 19th, 2018

This document relates to:

| | |
|---|---|
| **Troy T. Williams,** an Individual | : <br> : |
| | **Case No. 5:17-cv-01216-CLS** |
| *Plaintiff*, | : PLAINTIFF DEMANDS TRIAL <br> : BY JURY |
| V. | : <br> : <br> : |

**Equifax Information Services LLC.**
*Defendant*

---

## AFFIDAVIT

---

**Comes now**, Audley L. Crayton, to above named action, in Hillsboro, Alabama, MAKE OATH AND SAY THAT:

I do solemnly swear by all laws and statutes that apply, that I, Audley L. Crayton "affiant":

1. I am Audley L. Crayton.

2. I am a friend and client of said party the Plaintiff, Troy T. Williams

3. I have personal knowledge of the facts contained in this affidavit.

4. Plaintiff Williams presents this motion for a good cause, that cause being for the interest of equity and justice that any reasonable man or woman would confer that Williams has incurred physical, emotional and financial injury concerning this lawsuit.

5. I can attest that Plaintiff, Williams, since and prior to the filing of this lawsuit had to rely on my financial and transportation assistance concerning what appears to be complicated issues surrounding his credit and credit report.

6. I can attest that since the commencement of this suit, that Plaintiff Williams lost his personal vehicle due to circumstances beyond his control.

7. I can attest since the commencement of this lawsuit that Plaintiff Williams has had to travel round trip of approximately 40 miles from where he resides (in Toney, AL) to the Courthouse and Law Library to address this matter on a frequent basis.

8. I can attest that Plaintiff Williams since commencement of this lawsuit has appeared and comes across as withdrawn, not enjoying life and liberty that a reasonable person might consider.

Troy T. Williams v. Capital One Bank(USA)N.A. and Equifax Information Services LLC. | 3
**Case No. 5:17-cv-01216** |

9. I can attest that Plaintiff Williams has incurred physical changes that include loss of weight, unknown sickness in the form of head-aches, stomach problems that seem to occur on a frequent basis since commencement of this suit.

10. I can attest that Plaintiff Williams has incurred extreme financial hardship.

In accords with **28 U.S.C. § 1746**, Audley L. Crayton declares under penalty and perjury the aforementioned above is true and correct to the best of his knowledge.

*Audley L. Crayton*

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

## April 19th, 2018

This document relates to:

**Troy T. Williams,** an
Individual

    :
    :
    **CaseNo. 5:17-cv-01216-CLS**

*Plaintiff,*

    : PLAINTIFF DEMANDS TRIAL
    : BY JURY

V.

    :
    :
    :

**Equifax Information Services LLC.**
*Defendant*

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO (ECF 102)

---

## COVER-PAGE

## EXH-CC

## CAPITAL ONE FINANCIAL CORP (COF) ANNUAL REPORT

# Directors and Executive Officers

## Capital One Financial Corporation
### Board of Directors

**Richard D. Fairbank**
*Chair, CEO and President*
*Capital One Financial Corporation*

**Patrick W. Gross** C, G, R
*Chairman*
*The Lovell Group*

**Ann Fritz Hackett** C, G, R
*Partner and Co-Founder*
*Personal Pathways, LLC*

**Lewis Hay, III** C, G, R
*Former Chairman, CEO and President*
*NextEra Energy, Inc.*

**Benjamin P. Jenkins, III** A, C, R
*Former Senior Advisor, Managing Director*
*and Vice Chairman for Retail Banking*
*Morgan Stanley & Co.*

**Peter Thomas Killalea** C, R
*Owner and President*
*Aoinle, LLC*

**Pierre E. Leroy** A, C, R
*Managing Partner*
*Aspiture, LLC*

**Peter E. Raskind** A, R
*Owner*
*JMB Consulting, LLC*

**Mayo A. Shattuck III** C, G, R
*Chairman*
*Exelon Corporation*

**Bradford H. Warner** A, R
*Former President of Premier*
*and Small Business Banking*
*Bank of America Corporation*

**Catherine G. West** A, R
*Former Special Advisor*
*Promontory Financial Group*

## Capital One Financial Corporation
### Executive Officers

**Richard D. Fairbank**
*Chair, CEO and President*

**Robert M. Alexander**
*Chief Information Officer*

**Jory A. Berson**
*Chief Human Resources Officer*

**R. Scott Blackley**
*Chief Financial Officer*

**Kevin S. Borgmann**
*Chief Risk Officer*

**Stephen S. Crawford**
*Head of Finance and Corporate Development*

**Noelle K. Eder**
*Chief Card Customer Experience Officer*

**John G. Finneran, Jr.**
*General Counsel and Corporate Secretary*

**Frank G. LaPrade, III**
*Chief Enterprise Services Officer and*
*Chief of Staff to the CEO*

**Christopher T. Newkirk**
*President, International and Small Business Card*

**Michael C. Slocum**
*President, Commercial Banking*

**Michael J. Wassmer**
*President, U.S. Card*

**Jonathan W. Witter**
*President, Retail and Direct Banking*

**Sanjiv Yajnik**
*President, Financial Services*

A Audit Committee
C Compensation Committee
G Governance and Nominating Committee
R Risk Committee

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-K

☒  ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
**For the fiscal year ended December 31, 2016**

**OR**

☐  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

**For the transition period from _____ to _____**
**Commission File No. 1-13300**

# CAPITAL ONE FINANCIAL CORPORATION

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| Delaware | 54-1719854 |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| 1680 Capital One Drive, McLean, Virginia | 22102 |
| (Address of Principal Executive Offices) | (Zip Code) |

**Registrant's telephone number, including area code: (703) 720-1000**

Securities registered pursuant to section 12(b) of the act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock (par value $.01 per share) | New York Stock Exchange |
| Warrants (expiring November 14, 2018) | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series B | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series C | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series D | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series F | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series G | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series H | New York Stock Exchange |

**Securities registered pursuant to section 12(g) of the act: None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a Shell Company (as defined in Rule 12b-2 of the Exchange Act)   Yes ☐   No ☒

The aggregate market value of the voting stock held by non-affiliates of the registrant as of the close of business on June 30, 2016 was approximately $31,929,010,767. As of January 31, 2017, there were 480,641,838 shares of the registrant's Common Stock outstanding.

### DOCUMENTS INCORPORATED BY REFERENCE

1.   Portions of the Proxy Statement for the annual meeting of stockholders to be held on May 4, 2017, are incorporated by reference into Part III.

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

## FORM 10-K

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the fiscal year ended December 31, 2016
**OR**

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the transition period from _____ to _____
Commission File No. 1-13300

# CAPITAL ONE FINANCIAL CORPORATION

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **54-1719854** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **1680 Capital One Drive,**<br>**McLean, Virginia** | **22102** |
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: **(703) 720-1000**

Securities registered pursuant to section 12(b) of the act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock (par value $.01 per share) | New York Stock Exchange |
| Warrants (expiring November 14, 2018) | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series B | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series C | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series D | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series F | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series G | New York Stock Exchange |
| Depositary Shares, Each Representing a 1/40th Interest in a Share of Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series H | New York Stock Exchange |

Securities registered pursuant to section 12(g) of the act: None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).  Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | | |
|---|---|---|---|---|
| Large accelerated filer | ☒ | | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a Shell Company (as defined in Rule 12b-2 of the Exchange Act)   Yes ☐   No ☒

The aggregate market value of the voting stock held by non-affiliates of the registrant as of the close of business on June 30, 2016 was approximately $31,929,010,767. As of January 31, 2017, there were 480,641,838 shares of the registrant's Common Stock outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE**

1.   Portions of the Proxy Statement for the annual meeting of stockholders to be held on May 4, 2017, are incorporated by reference into Part III.

**Enhanced Prudential Standards and Other Requirements Under the Dodd-Frank Act**

As a BHC with total consolidated assets of $50 billion or more (a "covered company"), we are subject under the Dodd-Frank Act to certain enhanced prudential standards, including requirements that may be recommended by the Financial Stability Oversight Council ("Council") and implemented by the Federal Reserve and other regulators. As a result, we are subject to more stringent standards and requirements than those applicable to smaller institutions. The Council may also issue recommendations to the Federal Reserve or other primary financial regulatory agencies to apply new or heightened standards to risky financial activities or practices.

The Federal Reserve and FDIC have issued rules requiring covered companies to implement resolution planning for orderly resolution in the event the Company faces material financial distress or failure. The FDIC issued similar rules regarding resolution planning applicable to the Banks. In addition, the OCC issued final guidelines in September 2016 that require the Banks to develop recovery plans detailing the actions they would take to remain a going concern when they experience considerable financial or operational stress, but have not deteriorated to the point that resolution is imminent.

The Federal Reserve established a rule that implements the requirement in the Dodd-Frank Act that the Federal Reserve conduct annual stress tests on the capacity of our capital to absorb losses as a result of adverse economic conditions. The stress test rule also implements the requirement that we conduct our own semiannual stress tests and requires us to publish the results of the stress tests on our website or other public forum. The OCC adopted a similar stress test rule to implement the requirement that each of the Banks conduct annual stress tests.

The Federal Reserve has finalized other rules implementing certain other aspects of the enhanced prudential standards under the Dodd-Frank Act, which were applicable to us beginning on January 1, 2015 ("Enhanced Standards Rule"). Under the Enhanced Standards Rule, we must meet liquidity risk management standards, conduct internal liquidity stress tests, and maintain a 30-day buffer of highly liquid assets, in each case, consistent with the requirements of the rule. These requirements are in addition to the LCR, discussed above in "Basel III and United States Liquidity Rules." The Enhanced Standards Rule also requires that we comply with, and hold capital commensurate with, the requirements of, any regulations adopted by the Federal Reserve relating to capital planning and stress tests. Stress testing and capital planning regulations are discussed further below under "Dividends, Stock Repurchases and Transfers of Funds." The Enhanced Standards Rule also requires that we establish and maintain an enterprise-wide risk management framework that includes a risk committee and a chief risk officer.

While not a requirement of the Dodd-Frank Act, the OCC established regulatory guidelines ("Heightened Standards Guidelines") that apply heightened standards for risk management to large institutions subject to its supervision, including the Banks. The Heightened Standards Guidelines establish standards for the development and implementation by the Banks of a risk governance framework.

The Dodd-Frank Act also imposes new, more stringent standards and requirements with respect to bank and nonbank acquisitions and mergers and affiliate transactions. The Dodd-Frank Act also includes provisions related to corporate governance and executive compensation and new fees and assessments, among others.

**Investment in the Company and the Banks**

Certain acquisitions of our capital stock may be subject to regulatory approval or notice under federal or state law. Investors are responsible for ensuring that they do not, directly or indirectly, acquire shares of our capital stock in excess of the amount that can be acquired without regulatory approval, including under the BHC Act and the Change in Bank Control Act.

Federal law and regulations prohibit any person or company from acquiring control of the Company or the Banks without, in most cases, prior written approval of the Federal Reserve or the OCC, as applicable. Control exists if, among other things, a person or company acquires more than 25% of any class of our voting stock or otherwise has a controlling influence over us. For a publicly traded BHC like us, a rebuttable presumption of control arises if a person or company acquires more than 10% of any class of our voting stock.

Additionally, COBNA and CONA are "banks" within the meaning of Chapter 13 of Title 6.1 of the Code of Virginia governing the acquisition of interests in Virginia financial institutions ("Financial Institution Holding Company Act"). The Financial Institution Holding Company Act prohibits any person or entity from acquiring, or making any public offer to acquire, control of a Virginia financial institution or its holding company without making application to, and receiving prior approval from, the Virginia Bureau of Financial Institutions.

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

## April 19ᵗʰ, 2018

This document relates to:

**Troy T. Williams,** an
Individual

*Plaintiff,*

V.

**Equifax Information Services LLC.**
*Defendant*

:
:
**CaseNo. 5:17-cv-01216-CLS**
: PLAINTIFF DEMANDS TRIAL
: BY JURY
:
:
:

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO (ECF 102)

---

## COVER-PAGE

## EXH-DD

## PLAINTIFF'S REPLY TO DEFENDANT'S STATEMENT OF FACTS

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

## April 19th, 2018

This document relates to:

| | |
|---|---|
| **Troy T. Williams,** an Individual | : <br> : |
| | **CaseNo. 5:17-cv-01216-CLS** |
| *Plaintiff,* | : PLAINTIFF DEMANDS TRIAL <br> : BY JURY |
| V. | : <br> : <br> : |

**Equifax Information Services LLC.**
*Defendant*

---

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION FOR PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO (ECF 102)

---

### I.    Plaintiff's Response To Non-Movant Reply To Statement Of Facts:

1. Agree or Undisputed.

2. Agree or Undisputed.

3. Agree or Undisputed.

4. Agree or Undisputed.

5. Agree or Undisputed.

6. Agree or Undisputed.

7. Agree or Undisputed.

8. Agree or Undisputed.

9. Agree or Undisputed.

10. <u>Disputed in Part</u>. Equifax's records indicate an "ACDV" was generated on June 16th, 2017. Williams "agrees" Equifax failed to comply with FCRA and parts and sub-parts that apply to this case by failing to submit "ACDV" within 5 days from receipt of the letter dated June 9th, 2017.

11. <u>Disputed in Part.</u> Williams "agrees" Equifax did not report investigation results to him in a 30 day timely fashion as dictated by FCRA and parts and sub-parts that apply in this case. Williams "disputes" that Equifax conducted proper investigation upon receipt of dispute letter dated June 9th, 2017. (ECF 101 Exh-B *supra. Id* ¶ 2,3,4,5,6,16, 20,25,44,55).

12. Agree or Undisputed.

13. Agree or Undisputed.

14. Agree or Undisputed.

15. Agree or Undisputed.

16. Agree or Undisputed.

17. Agree or Undisputed.

18. <u>Disputed in Part.</u> By Counsel Reid's calculations this gave Equifax another day or extra day to send the "ACDV" within 5 days from receipt of the letter and to conduct a proper investigation. By Reid's calculations, this gave Equifax 7 days.(ECF 101 Exh-B *supra. Id* ¶ 2,3,4,5,6,43).

19. <u>Disputed in Part.</u> Williams "agree" that Equifax's records indicate that its vendor conducted work on the dispute on June 16th, 2017 and the dispute was assigned a confirmation#7167015034. Williams "disputes" that no "ACDV" was sent, Equifax's records indicate the work conducted on June 16th, 2017 generated an "ACDV" and the "ACDV" was sent to the furnisher of information, the data-furnisher, by way of the E-Oscar System.

20. <u>Disputed in Part.</u>  Williams "agrees" Equifax outsourced the dispute across seas to Serco, its vendor in India, where employees Ambrish Yadav, Ankur Mishra and Ahesh Vaishnav assisted in processing the dispute. Williams "disputes" that an "ACDV" was not sent to the furnisher of information.

21. Disputed.

22. <u>Disputed in Part.</u> Capital One Bank(USA)N.A. disclosure statement filed by Counsel Joshua H. Threadcraft in Eleventh Circuit Case 18-10191, clearly indicates that Equifax Inc., the parent company of Equifax Information Services LLC., owns more than 10% of stock in Capital One Financial

Corporation,(COF), which is the parent company of Capital One Bank(USA)N.A. Williams made reference by way of the case number 18-10191

23. <u>Dispute in Part.</u> Williams "agrees" that Equifax did not make referenced assertion in its' answer submitted on August 23rd, 2017 (ECF 24-25). Williams "disputes" that he failed to support referenced assertion by referencing any portion of the evidentiary record. Williams provided case number 18-10191.

24. Agree or Undisputed.

25. <u>Disputed in Part.</u> Williams "disputes" that he did use the right words…. "Willful" and "malicious" in his complaint when referring to Equifax reporting the judgment (Doc. ¶ 39, 87, 96, 100). Williams "agrees" Equifax admitted the Second Amended Complaint speaks for itself.

26. <u>Disputed in Part.</u> Williams "agrees" that he mentioned "*Millstone v. O'Hanlon Reports, Inc.,* 528 F 2d. 829, 834(8th Cir. 1976). Williams "disputes" Equifax objection that the purported statement is a legal conclusion. Williams simply re-stated what was already decided by the Court.

27. <u>Disputed in Part.</u> Williams "disputes" Equifax's records indicate judgment no longer showing on Williams credit file as of June 21st, 2017 (Doc. 101 at

22 EIS-Williams-000010). See "updated" as defined at (ECF 58). Williams "disputes" that the item in dispute remained parked on the account (See Exh-C EIS-Williams 000001).

28. <u>Disputed in Part.</u> Williams "agrees" that Equifax does not dispute that Experian and TransUnion "deleted"_the judgment from their credit files. Williams "disputes" Equifax objection that Experian and TransUnion are irrelevant to his claims against Equifax. According to Equifax's own manual (Data-Furnisher Guide) p. 6,(ECF 101Exh-E), which states, "ACDVs initiated by a CRA on behalf of a consumer are routed to the appropriate Data Furnisher based on the CRA and subscriber code affiliations indicated by the DF. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history. If an account is modified or deleted, **carbon copies** are sent to each CRA with whom the DF has a reporting relationship".

29. <u>Disputed in Part.</u> Williams "disputes" documents and language referenced do indicate "NO DISCLOSURE WILL BE SENT". Williams "agrees" Equifax did not send the results of the investigation, nor did Equifax notify it needed additional time (ECF 101 Exh-B *supra. Id.*¶ 4,5,6,7,8,16,20,25,44,55,56,58).

30. Agree or Undisputed.

31. <u>Disputed.</u> Equifax own records indicate a status of "updated" (ECF 58& 101Exh-C). Equifax records indicate that the item was continued to be reported until they removed and/or deleted the item.

32. Agree or Undisputed.

33. <u>Disputed.</u>  Williams "agrees" commenced suit on July 20th, 2017 against Equifax for  Invasion of Privacy, Negligent Wanton or Intentional Hiring And Supervision of Incompetent Employees or Agents and State Laws. Williams "disputes" that it is a legal conclusion.

34. <u>Disputed.</u> Upon submission of Williams Complaint, the Fed. R. Civ. P. Rule 4 and parts and sub-parts that apply, make clear that after a party has been served, that party has 21 days to submit an answer.

35. <u>Disputed in Part.</u> Williams "agrees" that he filed his complaint on July 20th, 2017 and Equifax filed its' answer on August 23rd, 2017. Williams "disputes" and court docket reflects Equifax filed its answer 5 days late (ECF 28).

36. <u>Disputed in Part.</u> Williams "agrees" he moved for "entry of default" (ECF 21) and the court granted "entry of default" (ECF 23) on August 23rd, 2017.

37. <u>Disputed in Part.</u> It is a matter of Court Record (ECF 28) that the Court incorporated Jessica Spurlock's declaration found on p. 3 of 5 of ORDER (ECF 28) that admits Equifax received the complaint on July 28th, 2017.

38. <u>Disputed.</u> Equifax admit they object that Jessica Spurlock can provide with specificity and particularity the exact location of the "mystery and/or another location" as vague and ambiguous.

39. <u>Disputed.</u>

40. <u>Disputed in Part.</u> Williams "agrees" Equifax has been sued in the State of Alabama prior to Williams Complaint for prior 1681i(a)(1)(A), and/or 1681i(a)(1)(B), and/or 1681e(b), and/or 1681h(e). Williams "disputes" that Equifax failed to answer his Motion To Strike (ECF 73) which mentioned the referenced case.

41. <u>Disputed in Part.</u> Williams "agrees" the referenced complaint speaks for itself. Williams "disputes" that Equifax failed to answer his Motion To Strike (ECF 73) which makes reference to the Roger's v. Discover Bank et. al. case.

42. <u>Disputed in Part.</u> Affidavit (ECF 45) does ask for all information in Williams credit file, along with specifics as it pertains to this case. Also Williams cites, inadvertence, on his part for including (ECF 11) and not citing (ECF 12) as it pertains to all information requested in his credit file.

43. Agree or Undisputed.