FILED

2018 Sep-20  PM 02:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **TROY T. WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Civil Action No. 5:17-CV-01216-CLS** |
| | ) |
| **EQUIFAX   INFORMATION** | ) |
| **SERVICES, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

The Second Amended Complaint filed by *pro se* plaintiff, Troy T. Williams,

asserts claims against Equifax Information Services, Inc., for violation of the Fair

Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (Count I), as well as state law claims

for invasion of privacy (Count II), negligent, wanton and/or intentional hiring and

supervision (Count III),[1] and an untitled claim alleging that Equifax published false

---

[1] *See* doc. no. 57 (Second Amended Complaint).  That pleading also alleged a Fair Credit Reporting Act claim against Capital One Bank (USA), N.A. ("Capital One").  *See id.* at 21-22.  However, that claim was dismissed in a memorandum opinion and order entered on January 8, 2018 as document number 84, leaving Equifax Information Services, Inc., as the only defendant.  Plaintiff filed an interlocutory appeal, but the Eleventh Circuit dismissed, saying:

> This appeal is DISMISSED, *sua sponte*, for lack of jurisdiction.  Appellant Troy Williams appeals from the district court's January 8, 2018, order granting Appellee Capital One Bank's motion to dismiss the complaint.  Mr. Williams's claims against Equifax Information Services are still pending.  The district court's order is not a final, appealable order because it does not dispose of all claims against all parties, and the district court has not certified the order for immediate review under Federal Rule of Civil Procedure 54(b).  *See* 28 U.S.C. §§ 1291, 1292; *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1245-46 (11th Cir. 2012);

information about him (Count IV).[2]  The case currently is before the court on the

parties' cross-motions for summary judgment.[3]  Upon consideration of the motions,

briefs, and evidentiary submissions, the court concludes that plaintiff's motion is due

to be denied, and defendant's motion granted.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary

---

*CSX Transp. Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000);
*Broussard v. Lippman*, 643 F.2d 1131,1133 (5th Cir. Unit A Apr. 1981).

Doc. no. 100 (Eleventh Circuit Mandate and Order), at 2.

[2] Specifically, plaintiff alleges that:

> 98.    Defendant Equifax has violated Alabama State Law by publishing false and/or inaccurate information concerning Plaintiff.

> 99.    Defendant, Equifax intentionally "*published*" false and defamatory information related to the Defendant Capital One's account in a willful and malicious manner with the intent to harm consumer [*sic*].

> 100.    Defendant, Equifax acted with willfulness, negligence, malice, wantonness, recklessness, carelessness, and/or intentional "*conduct*" in their dealings with and about Plaintiff Williams with the intent to harm as set forth in this Complaint.  This includes the initial reporting of Defendant Capital One account [*sic*]; the handling of any investigations on the account; and all other aspects as set forth in this Complaint.

> 101.    It was foreseeable, and Equifax did in fact forsee [*sic*] it, that refusing to properly update and investigate would cause the exact type of harm suffered by the Plaintiff Williams.

Doc. no. 57 (Second Amended Complaint), at 25 (emphasis in original, alterations supplied).

[3] *See* doc. no. 101 (Plaintiff's Motion for Summary Judgment), and doc. no. 107 (Equifax Motion for Summary Judgment).

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration

3

supplied).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)

(asking "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law").

> "The standard of review for cross-motions for summary judgment
> does not differ from the standard applied when only one party files a
> motion, but simply requires a determination of whether either of the
> parties deserves judgment as a matter of law on the facts that are not
> disputed." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242-43
> (N.D. Ga. 2014) (citing *Am. Bankers Ins. Group v. United States*, 408
> F.3d 1328, 1331 (11th Cir. 2005)).  "The Court must consider each
> motion on its own merits, resolving all reasonable inferences against the
> party whose motion is under consideration." *Id.*  "The Eleventh Circuit
> has explained that '[c]ross-motions for summary judgment will not, in
> themselves, warrant the court in granting summary judgment unless one
> of the parties is entitled to judgment as a matter of law on facts that are
> not genuinely disputed.'" *Id.* (quoting *United States v. Oakley*, 744 F.2d
> 1553, 1555 (11th Cir. 1984)). "Cross-motions may, however, be
> probative of the absence of a factual dispute where they reflect general
> agreement by the parties as to the controlling legal theories and material
> facts. *Id.* (quoting *Oakley*, 744 F.2d at 1555-56).

*Alabama Municipal Insurance Corporation v. Scottsdale Insurance Company*, 297

F. Supp. 3d 1248, 1252 (N.D. Ala. 2017) (alteration in original).

## II. RELEVANT FACTS

Capital One Bank (USA), NA ("Capital One"), obtained a default judgment

against Troy T. Williams in the District Court of Madison County, Alabama, on

January 21, 2011.  The judgment entry reads as follows:

This cause comes before the court upon the Plaintiff's application for a default in the above-styled matter. After reviewing the court record, the court finds that the defendant has been duly served and has failed to answer or otherwise defend upon the complaint. The court further finds the default has been entered in the above styled matter and that a default judgment is due to be entered by the court.

Wherefore, it is hereby ordered, adjudged and decreed that a judgment by default is entered in favor of the Plaintiff, in the sum of $4,078.83 plus costs of court and such post-judgment interest as may accrue on this judgment for which execution may issue.

Doc. no. 107 (Equifax Motion for Summary Judgment), at ECF 40 (Ex. A – Public

Records Copy of Default Judgment in favor of Capital One Bank).[4]

The Alabama Court of Civil Appeals described the circumstances leading to

that judgment and subsequent proceedings in the state court system as follows:

On December 20, 2010, Capital One filed a complaint against Williams in the district court, asserting that Williams owed $4,078.83 on an account stated between Capital One and Williams. On January 18, 2011, Capital One sought a default judgment against Williams for failure to answer or otherwise defend against the complaint. On January 21, 2011, the district court entered a default judgment in favor of Capital One in the amount of $4,078.83, plus court costs and postjudgment interest.

On September 14, 2011, Williams filed in the district court an "affidavit of status as secured party and creditor" in which he declared

---

[4] "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically: *i.e.*, "Electronic Case Filing." *See The Bluebook: A Uniform System of Citation*, Rule 7.1.4, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010). When this court cites to pagination generated by the header electronically imprinted on a scanned copy of a document filed in this case, it will, as here, precede the page number(s) with the letters "ECF."

himself a member of the "Sovereign People of the Free Republic of
Alabama" and sought the withdrawal of any "adverse information" from
his credit records and relief from the default judgment.  On October 11,
2011, Williams filed in the district court a motion to dismiss, in which
he stated, among other things, that "[t]his notice is a trespass in
admiralty."  Williams also filed in the district court a "common law
copyright notice," purporting to reserve rights regarding the copyright
and trademark of his name.  On November 9, 2011, the district court
denied Williams's motion requesting that the case be dismissed.

On September 16, 2013, Williams filed in the district court an
independent action seeking to set aside the default judgment.  In the
pleading initiating the action, Williams asserted, among other things,
that Capital One and Holloway[5] had committed fraud upon the court.
Williams also asserted in his pleading, based on his assertion of fraud
upon the court, various claims against Capital One and Holloway, and
he sought damages in the amount of $128,000,000.  On September 23,
2013, the district court entered an order that stated:  "The Court having
lost jurisdiction in this matter, [Williams's] MOTION TO SET ASIDE
is hereby DENIED."  On October 3, 2013, Williams filed a "motion to
reconsider — motion to amend complaint."   In that postjudgment
motion, Williams purported to amend his claims against Capital One and
Holloway, asserting fraud upon the court, to reduce the requested
amount of damages to $2,900, so that his claims would remain within
the district court's jurisdiction. *See* Ala. Code 1975, § 12-12-31(a)
(providing that the district court has exclusive jurisdiction over all civil
actions in which the matter in controversy does not exceed $3,000).  As
argued by Capital One on appeal, Williams's October 3, 2013,
postjudgment motion was denied by operation of law on October 17,
2013, pursuant to Rule 59.1(dc), Ala. R. Civ. P.  On October 22, 2013,
Williams filed a document titled "addendum — motion to amend
complaint," again seeking to set aside the default judgment based upon
fraud upon the court and, for the first time, citing Rule 60(b), Ala. R.
Civ. P.  That motion was a successive postjudgment motion, however,
seeking substantially the same relief as Williams's October 3, 2013,

---

[5] "Holloway" is a shorthand reference to Capital One's collection agency, Holloway &
Moxley, L.L.P.

motion; thus, that motion did not toll the time for taking an appeal. *See Green v. Green*, 43 So. 3d 1242, 1243-44 (Ala. Civ. App. 2009).   On November 1, 2013, the district court entered an order purporting to deny Williams's "motion to reconsider"; however, that order was a nullity because the motion had already been denied by operation of law on October 17, 2013. *See Moragne v. Moragne*, 888 So. 2d 1280, 1282 (Ala. Civ. App. 2004); and Rule 59.1(dc).

Williams filed an appeal to the circuit court on November 12, 2013.   Capital One and Holloway filed a motion to dismiss the appeal on the basis that the appeal had been untimely filed.   On February 3, 2014, the circuit court entered an order granting the motion to dismiss. Williams filed a postjudgment motion on February 28, 2014; that motion was denied by the circuit court on April 10, 2014.   Additionally, in the circuit court's April 10, 2014, order denying Williams's postjudgment motion, the circuit court awarded attorney's fees in the amount of $1,112.50 as a sanction against Williams, as requested by Capital One and Holloway.   Williams filed his notice of appeal to this court on May 15, 2014.

Capital One argues on appeal that the circuit court lacked jurisdiction and, therefore, that it properly dismissed Williams's appeal from the district court.   This court outlined the appropriate standard of review in *M.E.W. v. J.W.*, 142 So. 3d 1168, 1171 (Ala. Civ. App. 2013):

> "'The timely filing of a notice of appeal is a jurisdictional act.' *Rudd v. Rudd*, 467 So. 2d 964, 965 (Ala. Civ. App. 1985); *see also* Committee Comments to Rule 3, Ala. R. App. P. The question whether the mother's appeal was timely and, thus, whether the circuit court acquired subject-matter jurisdiction over the mother's appeal is a question of law; thus, we review *de novo* the dismissal of the mother's appeal by the circuit court.   *See Banks v. Estate of Woodall*, 129 So. 3d 294 (Ala. Civ. App. 2013); *see also Ex parte Terry*, 957 So. 2d 455 (Ala. 2006) (stating that a claim that a court lacks subject-matter jurisdiction presents a question of law, which an appellate

court reviews de novo).”

As discussed above, Williams's October 3, 2013, postjudgment motion was denied by operation of law on October 17, 2013. “A notice of appeal from a judgment of a district court must be filed 'within 14 days from the date of the judgment or the denial of a posttrial motion, whichever is later.' Ala. Code 1975, § 12–12–70(a).”  *McCaskill v. McCaskill*, 111 So. 3d 736, 737 (Ala. Civ. App. 2012).  Williams filed his notice of appeal to the circuit court on November 12, 2013, well over 14 days following the denial by operation of law of his October 3, 2013, postjudgment motion.  Thus, that notice of appeal was untimely, and the circuit court never acquired jurisdiction over Williams's appeal.  *See Ryans v. State ex rel. Stoudmire*, 963 So. 2d 95, 96 (Ala. Civ. App. 2007).  Although the circuit court properly dismissed Williams's appeal, Williams proceeded to file a postjudgment motion from that dismissal, and the circuit court purported to deny that postjudgment motion and to award attorney's fees as a sanction against Williams.  Because the circuit court never obtained jurisdiction over Williams's appeal, however, it lacked jurisdiction to entertain any further motions or pleadings.  *See Maclin v. Congo*, 106 So. 3d 405, 408 (Ala. Civ. App. 2012).  Thus, the circuit court's April 10, 2014, order is void.  *Id*.

Based on the foregoing, we affirm the circuit court's judgment dismissing Williams's action for lack of subject-matter jurisdiction, albeit with instructions to the circuit court to vacate its April 10, 2014, void order.

*Williams v. Capital One Bank (USA), N.A.*, 192 So. 3d 4, 5-6 (Ala. Civ. App. 2015)

(footnote supplied, all other alterations and capitalization in original).[6]

---

[6] That was not the end of Williams's prior litigation, however.  As noted in the Memorandum Opinion entered by this court on January 8, 2018, addressing the motion to dismiss plaintiff's claim against defendant Capital One Bank, Williams commenced two prior proceedings in the Northern District of Alabama:  *i.e.*, *Williams v. State of Alabama and Capital One Bank, N.A.*, Civil Action No. 5:13-cv-1431-IPJ (closed Aug. 7, 2013); and *Williams v. Capital One Bank (USA), N.A.*, Civil Action No. 5:14-cv-2173-MHH (transferred to the U.S. District Court for the Northern District of Illinois, an MDL court, on June 8, 2015).  *See* doc. no. 84 (Memorandum Opinion), at 10-12.

The credit file maintained by Equifax Information Services, Inc., listed Capital One's $4,078.83 default judgment against plaintiff.  *See* doc. no. 107 (Equifax Motion for Summary Judgment), ECF 45 (Declaration of Celestina Gobin), at ¶ 30 ("Mr. Williams' Equifax file contained a judgment in the amount of $4,078 in favor of Capital One Bank . . . .").[7]

## III.  DISCUSSION

Plaintiff asserts that Equifax's inclusion of the Capital One default judgment in his credit file violated two provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").  First, plaintiff asserts that Equifax violated 15 U.S.C. § 1681e(b), which provides that:  "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Second, he asserts that Equifax also violated 15 U.S.C. § 1681i(a)(1), which requires a credit reporting agency to reinvestigate items disputed by consumers:  *i.e.*,

> **(A)  In general**. — Subject to subsection (f), if the completeness *or accuracy* of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable

---

[7] There is a dispute over the issue of whether Equifax merely maintained the state-court judgment in plaintiff's *internal credit file*, or *reported it to a third party*.  It is not necessary to resolve that dispute, however, because there is no indication that Equifax *either* inaccurately included the judgment in plaintiff's file, *or* inaccurately reported it to a third party.

reinvestigation to determine whether the disputed information is *inaccurate* and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

> **(B) Extension of period to reinvestigate**. — Except as provided in subparagraph (C), the 30-day period described in subparagraph (A) may be extended for not more than 15 additional days if the consumer reporting agency receives information from the consumer during that 30-day period that is relevant to the reinvestigation.

> **(C) Limitations on extension of period to reinvestigate**. — Subparagraph (B) shall not apply to any reinvestigation in which, during the 30-day period described in subparagraph (A), the information that is the subject of the reinvestigation is found to be *inaccurate* or incomplete or the consumer reporting agency determines that the information cannot be verified.

15 U.S.C. § 1681i(a)(1) (emphasis supplied).[8]

---

[8] Plaintiff also purports to assert a claim that defendant violated 15 U.S.C. §1681h(e), which states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

That provision governs Fair Credit Reporting Act pre-emption of state law claims; it does not provide a basis for a separate claim. *Austin v. Certegy Payment Recovery Services, Inc.*, No. 2:11-CV-00401-RDP, 2014 WL 546819, at *9 (N.D. Ala. Feb. 11, 2014) ("Subsection 1681h(e) governs preemption under the FCRA, but does not provide a separate right of action. Austin cannot assert a claim under § 1681h(e)."). Indeed, plaintiff has not offered any separate argument within any of his briefs to support a claim under § 1681h(e). Accordingly, to the extent he intended to assert such a claim, summary judgment is due to be granted in defendant's favor on that claim.

A.     **The Basic Requirement**:   *Proof that a consumer reporting agency either recorded or reported* inaccurate *information*

Both of plaintiff's claims require a showing that a consumer reporting agency like Equifax *either* recorded *or* reported *inaccurate information* about a consumer's credit.  *See*, *e.g.*, *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a *prima facie* violation of section [§ 1681e(b)], the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing *'inaccurate' information.  If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section* [1681e(b)], *and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency*." (alterations and emphasis supplied, footnotes omitted));  *id.* at 1160 ("[A section 1681i(a)(1)] claim is properly raised when a particular credit report contains a *factual deficiency or error* that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." (alteration and emphasis supplied)).  *See also Jackson v. Equifax Information Services, LLC.*, 167 F. App'x 144, 146-47 (11th Cir. 2006) (affirming the entry of summary judgment in favor of Equifax on claims under §§ 1681e(b) & 1681i(a) when the plaintiff presented no evidence that *inaccurate information* in his credit report caused a denial

of credit).

Plaintiff contends that the amount of Capital One's default judgment was based upon a "factual error" in the original entry of judgment by the state court:

> Williams argument is NOT "*based on a contention that he does not owe the state court judgment*" . . . rather, it is based on a FACTUAL ERROR reported regarding the amount of the judgment, as Capital One Bank (USA) N.A. knows it cannot obtain POST JUDGMENT interest and fees WITHOUT a cardholder agreement . . . .

Doc. no. 109 (Plaintiff's Opposition to Defendant's Motion for Summary Judgment), at ECF 19 (capitalization and italicized emphasis in original, first ellipsis in original, second ellipsis supplied).

That contention misses the point of the Fair Credit Reporting Act provisions on which plaintiff's claims are based.  He has not demonstrated that the state court judgment was either *inaccurately recorded* by Equifax, or *inaccurately reported* to a third party.  Unquestionably, a judgment in the principal amount of $4,078.83 was entered against plaintiff in the District Court of Madison County, Alabama, on January 21, 2011, and that judgment was upheld on subsequent appeal.  Plaintiff may believe that judgment should have been entered for a lesser amount, but the time for asserting that contention was *either* before judgment was entered against him, *or* on direct appeal from the judgment in the state court system.  Equifax can only record and report the information that is available in the public record.

12

**B.      The *Rooker-Feldman* Doctrine**

Plaintiff's Fair Credit Reporting Act claims against Equifax also are barred by

the "*Rooker-Feldman* doctrine."   *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

> *The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments.  Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009).  This is because "[28 U.S.C.] § 1257, as long interpreted, vests authority to review a state court judgment solely in th[e Supreme] Court."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).    The Supreme Court recently has cautioned that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name:  *cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.*"  *Id.* at 284, 125 S. Ct. 1517; *see also Lance v. Dennis*, 546 U.S. 459, 464, 126 S. Ct. 1198, 163 L. Ed.2d 1059 (2006) (*per curiam*) (noting the "narrowness" of the *Rooker-Feldman* rule).  We have since explained that the *Rooker-Feldman* doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was "inextricably intertwined" with the state court judgment so that (1) the success of the federal claim would "effectively nullify" the state court judgment, or that (2) the federal claim would succeed "only to the extent that the state court wrongly decided the issues."  *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (*per curiam*) (internal quotation marks omitted).

*Alvarez v. Attorney General for Florida*, 679 F.3d 1257, 1262-63 (11th Cir. 2012)

(emphasis added, alterations in original).

13

1.    **The application of the doctrine to plaintiff's claims**

Two unpublished decisions from other federal district courts that address claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), tend to support by analogy Equifax's argument that plaintiff's Fair Credit Reporting Act claims are inextricably intertwined with the legitimacy of the state court default judgment and, therefore, are barred by the *Rooker-Feldman* doctrine. *See Franklin v. Dean*, No. 2:11-CV-683-WKW, 2013 WL 1867105 (M.D. Ala. May 3, 2013); and *Graham v. Tasa Group, Inc.*, No. 2:13-CV-00748-LSC, 2015 WL 875228 (N.D. Ala. Mar. 2, 2015).

a.    ***Franklin v. Dean***

In the first case cited above, the *pro se* plaintiff allegedly owed a debt of $141.16 to the Alabama State Employees Credit Union. *Franklin*, 2013 WL 1867105, at *1. The Credit Union obtained a default judgment against Franklin in state court, and the Credit Union's attorney, Richard C. Dean, Jr., attempted to collect the judgment. *Id.* at *1-*2. Franklin sued Dean in federal district court, alleging that Dean committed multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and two of those claims proceeded to trial. *Id.* at *4. First, Franklin alleged that Dean violated 15 U.S.C. § 1692g(a), which requires debt collectors to send written notice of the debt to the consumer within five days of

14

initial contact with that consumer. *Id.* at *5.  Franklin also alleged that Dean violated

15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive,

or misleading representation or means in connection with the collection of any debt."

*Id.* at *5-*6.  The court noted that, in order for Franklin to prevail on either of her

claims under the FDCPA, Franklin would need to demonstrate that there was a "debt"

— a term defined by the Act as "any obligation or alleged obligation of a consumer

to pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, or

household purposes, whether or not such obligation has been reduced to judgment."

*Id.* at *6 (quoting 15 U.S.C.A. § 1692a(5)).  The district court found that Franklin's

first FDCPA claim was barred by the statute of limitations, and the second failed on

the merits.  *Franklin*, 2013 WL 1867105, at *9.

Franklin argued that, because she had denied owing the underlying debt, *any*

collection efforts by Dean violated the FDCPA.  The court held that it could not

consider that argument, stating:  "*To the extent that Ms. Franklin asks this court to*

*undo the state district court's default judgment against her and to decide whether she*

*owed the underlying debt*, the court lacks subject matter jurisdiction to do so under

the *Rooker-Feldman* doctrine."  *Id.* at *8 (emphasis supplied).

When holding that Franklin was "a state-court loser by way of a state-court

judgment," the court clarified that "a default judgment counts for purposes of *Rooker-Feldman*." *Id.* (citing *Jones v. Commonwealth Land Title Insurance Co.*, 459 F. App'x 808, 810 (11th Cir. 2012), and *MSK EyEs Ltd. v. Wells Fargo Bank, National Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008)).

The court also found that the state court default judgment was inextricably intertwined with Franklin's argument in her federal case because, "[i]n attacking the validity of the underlying debt in this lawsuit, *Ms. Franklin essentially asks this court to review the state-court judgment and give her relief denied in the state court*," *id.* at *9 (alteration and emphasis supplied), which is barred by the *Rooker-Feldman* doctrine.

**b.   *Graham v. Tasa Group, Inc.***

The second case cited above grew from the fact that Tasa Group had obtained a default judgment against Roderick Graham in a Pennsylvania state court. *Graham v. Tasa Group, Inc.*, No. 2:13-CV-00748-LSC, 2015 WL 875228, at *1-2 (N.D. Ala. Mar. 2, 2015). Graham subsequently filed a federal action against Tasa Group and three individuals who had acted as its agents in the U.S. District Court for the Northern District of Alabama, and alleged violations of the Fair Debt Collection Practices Act, as well as the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO"). Specifically, he alleged that:

16

> (1) Tasa Group fraudulently entered into an agreement . . . ; (2) Tasa
> Group engaged in theft when it took money from him without providing
> what he believes he was entitled to in return . . . ; (3) *Tasa Group*
> *violated the FDCPA by attempting to collect on a debt that is not*
> *properly owed* . . . ; and (4) Tasa Group violated the RICO statute by
> engaging in a scheme to fraudulently enter into an agreement relating to
> expert witness services and engaging in a scheme to collect money not
> lawfully owed . . . .

*Id.* at *9 (emphasis and ellipses supplied).

U. S. District Judge L. Scott Coogler held that the *Rooker-Feldman* doctrine

barred all of Graham's claims because

> (1) Graham is a "state-court loser" in the Pennsylvania action; (2) the
> Pennsylvania judgment was rendered before the instant lawsuit was
> filed; and (3) Graham now complains of injuries caused by the judgment
> in the Pennsylvania action.

*Id*. at *7 (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280,

284 (2005)).  Judge Coogler explicated the first of those three points by observing

that the Pennsylvania default judgment counted for purposes of the *Rooker-Feldman*

doctrine.  *Graham*, 2015 WL 875228, at *7 (citing *MSK EyEs Ltd. v. Wells Fargo*

*Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) ("The fact that a judgment was

entered on a party's default does not alter the applicability of the *Rooker-Feldman*

doctrine.")); *Ballyhighlands, Ltd. v. Bruns*, 182 F.3d 898 (Table), 1999 WL 377098,

at *2 (2nd Cir. May 28, 1999) ("*Rooker-Feldman* applies to default judgments just

as it does to other types of judgments."); *cf. Jones v. Commonwealth Land Title Ins.*

17

*Co.*, 459 F. App'x 808, 810 (11th Cir. 2012) (rejecting argument that a motion for default summary judgment was a final judgment for purposes of *Rooker-Feldman* because "there is nothing in the record that indicates that there was a final or conclusive judgment on the merits in Jones's state court case, and merely filing a default summary judgment motion does not result in the entry of a default judgment").

In addition, Judge Coogler found that

> Graham's federal RICO and FDCPA claims are "inextricably intertwined" with the judgment entered by the Pennsylvania court, *i .e.*, that Graham owes Tasa Group the underlying debt, in the sense that they are premised on the state court having ruled erroneously.  In other words, this Court can not decide in Graham's favor on these federal claims unless it decides that the Pennsylvania court erred in its judgment.  Moreover, if the Pennsylvania court had not ruled against Graham, the portion of Graham's RICO and FDCPA claims premised on Tasa Group's attempts to collect the debt based on the default judgment would cease to exist.  Thus, again, the only way this Court could find that these attempts to collect the debt could have injured Graham is by finding that the state court ruled erroneously.  As such, this Court is without subject matter jurisdiction to entertain Graham's two federal claims. *See Franklin v. Arbor Station, LLC*, 549 F. App'x 831, 833 (11th Cir. 2013) (in case where apartment complex brought an unlawful detainer action and won a judgment of possession against plaintiff in state court and plaintiff then brought FDCPA claims in federal court, affirming district court's dismissal of plaintiff's FDCPA claims on *Rooker-Feldman* grounds because ruling in plaintiff's favor on any of those claims would necessitate a finding that the state court's decision was erroneous); *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1316-27 (S.D. Fla. 2011) (dismissing a RICO claim under *Rooker-Feldman*, where plaintiff sought to attack a state foreclosure judgment,

18

because the RICO claims were inextricably intertwined with that foreclosure judgment), *affirmed* 477 F. App'x 558 (11th Cir. 2012).

*Graham,* 2015 WL 875228, at *10.

> ### c.   *Conclusion*

In summary, even though the opinions in *Franklin* and *Graham* addressed claims under the Fair Debt Collection Practices Act and not, as here, the Fair Credit Reporting Act, the rationale of both decisions is persuasive.  As in those cases, there simply is no way for this court to find in plaintiff's favor on his Fair Credit Reporting Act claim without implicitly overruling the state court default judgment.  That is exactly what the *Rooker-Feldman* doctrine prohibits.

> ## 2.   **Plaintiff's contention that this court previously concluded that the *Rooker-Feldman* doctrine does not bar his claims**

Plaintiff attempts to forestall the conclusion stated above by noting that this court previously held that the *Rooker-Feldman* doctrine did not bar his Fair Credit Reporting Act claim against the dismissed defendant, Capital One Bank (USA), N.A.

> ### a.   ***This court's prior opinion addressing plaintiff's claim against Capital One Bank***

Indeed, this court's prior opinion did state that, even though the *Franklin* and *Graham* opinions establish that the default judgment entered in favor of Capital One can be considered a "prior state court judgment" for purposes of the *Rooker-Feldman*

doctrine, those cases did not necessarily lead to a conclusion that the doctrine bars *all claims* in federal court for violation of *either* the Fair Debt Collection Practices Act ("FDCPA") *or* the Fair Credit Reporting Act ("FCRA") that are based upon the *reporting* or *collection* of an underlying state court judgment. *See* doc. no. 84 (Memorandum Opinion and Order), at 21. Instead, this court relied upon another persuasive district court case addressing the FDCPA — *i.e.*, *Collins v. Erin Capital Management, LLC*, 991 F. Supp. 2d 1195 (S.D. Fla. 2013) — which drew a distinction

> between FDCPA claims seeking to overturn state court judgments and FDCPA claims seeking to hold defendants liable for violations of the statute occurring during collection efforts preceding any judgment. *See, e.g., Solis v. Client Servs., Inc.*, No. 11-23798-Civ, 2013 WL 28377, at *4 (S.D. Fla. Jan. 2, 2013) ("Thus, even where a debtor has incurred a valid debt that a creditor is entitled to collect, a debt collector may violate the FDCPA if its methods in attempting to collect the debt do not comply with the requirements of the FDCPA. Such a violation may occur despite the validity of the debt and in no way is dependent upon the legitimacy of the debt."); *Drew v. Rivera*, No. 1:12-cv-9-MP-GRJ, 2012 WL 4088943, at *3 (N.D. Fla. Aug. 6, 2012), *adopted by, Drew v. Rivera*, No. 1:12-cv-9-MP-GRJ, 2012 WL 4088871, at *1 (N.D. Fla. Sept. 27, 2012) ("The fact that a state court judgment was entered recognizing the credit card debt is not mutually exclusive to claims that a debt collector violated the FDCPA in seeking to collect on the indebtedness or violated the FDCPA in attempting to collect on the state court judgment that was entered. Thus, the Court would not be overturning the state court's judgment, which concluded that the debt was enforceable, if it were to find Defendant liable for unfair debt collection practices."). In other words, if an "allegation is premised on [d]efendants' conduct and practices in collecting the debt, [and] not the

20

validation or legitimacy of the debt itself, it is not precluded by the *Rooker-Feldman* doctrine." *Solis*, 2013 WL 28377, at *5; *see also Velardo v. Fremont Inv. & Loan*, 298 Fed. Appx. 890, 892 (11th Cir. 2008) ("[T]he court focuses on the federal claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff." (citation omitted)).

This approach is consistent with the law in other circuits. *See, e.g., Snyder v. Daniel N. Gordon, P.C.*, No. C11-1379 RAJ, 2012 WL 3643673, at *8 (W.D. Wash. Aug. 24, 2012) ("[Plaintiff] does not ask this court to invalidate or reject the [state] court's action. She does not deny that she owes American Express a debt, as the [state] court ruled she does. She does not complain of any injury she suffered because of the [state] court's judgment against her. She instead complains of the steps Defendants took in their attempts to collect the debt. The court therefore holds that the [state] court judgment against [Plaintiff] does not preclude her from bringing the claims she made in this case."); *Bradshaw v. Hilco Receivables*, LLC, 765 F. Supp. 2d 719, 727 n. 7 (D. Md. 2011) ("In the present case, the *Rooker-Feldman* doctrine is not implicated — Plaintiffs are not attempting to appeal unfavorable state court decisions, and this Court's holdings will not disturb any underlying state actions. . . . [R]egardless of the legality of any state court collection lawsuits filed by [the defendant], the individual plaintiffs are entitled to damages as a result of [the defendant's] failure to obtain a license under Maryland and federal law."); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006) ("Plaintiffs' alleged injuries here are not the result of the state court judgments themselves, but rather from the allegedly illegal practices Defendants used to obtain those state court judgments. Plaintiffs' claims arose prior to the various entries of default judgment in state court, and . . . they are separate and distinct from those judgments." (citation omitted)).

Doc. no. 84 (Memorandum Opinion and Order), at 21-23 (quoting *Collins*, 991 F.

Supp. 2d at 1203-04).[9]

This court's prior memorandum opinion acknowledged that Troy Williams had stated his belief that the default judgment entered against him in state court was meritless,[10] but went on to say:

> Even so, his actual claim against Capital One is based upon Capital One's alleged failures to conduct an appropriate re-investigation of his claim, and to appropriately report the results of the re-investigation to consumer reporting agencies. That claim challenges Capital One's actions and inactions with regard to the *reporting* of Williams's debt, but it does not challenge the validity of the debt itself. *Accordingly, success on Williams's FCRA claim in this case would not* "effectively nullify" the state court default judgment, nor is it true that Williams's federal claims can succeed only to the extent that the state court wrongly decided the issues before it. *See Alvarez*, 679 F.3d at 1263. *Because Williams's FCRA claim* [against Capital One] *is not inextricably intertwined with the state court default judgment*, the *Rooker-Feldman* doctrine does not bar the claim.

---

[9] *See also Rumbough v. MidFirst Bank*, 2008 WL 11336713, at *3 (M.D. Fla. Feb. 4, 2008) (holding that, while the *Rooker-Feldman* doctrine would bar the federal plaintiff's request for an injunction to prevent a state foreclosure sale, it would not bar a claim that a creditor violated the Fair Credit Reporting Act by repeatedly and willfully issuing false consumer credit reports concerning the plaintiff, and by failing to investigate the plaintiff's disputes regarding the debt).

[10] *See* doc. no. 84 (Memorandum Opinion and Order), at 23 (citing doc. no. 57 (Second Amended Complaint), at ¶ 20 ("Capital One Bank willfully, intentionally, maliciously, and knowingly reported false or inaccurate information to Equifax and other CRA's . . . ."), ¶ 21 ("The inaccuracies include, but are not limited to, the 'amount' of the alleged debt reported and lack of signed effective agreement copyrighted 2004."), ¶ 31 ("Defendant Capital One Bank reported to the credit reporting agencies, like Equifax, Experian, and TransUnion $4,078.83, an inaccurate amount owed without providing signed effective cardholder agreement copyrighted 2004."), ¶ 38 ("Defendant, Capital One Bank . . . continued to furnish the false and inaccurate information . . . ."), ¶ 45 ("Capital One Bank was provided with more than sufficient information in the dispute and in their own internal sources of information to conduct an investigation and to conclude that the account complained of was factually inaccurate, incomplete or could not be verified."), ¶ 64 ("Defendant Capital One failed to refrain from continuing to submit information that it knows (or should know) is incorrect.")).

Doc. no. 84 (Memorandum Opinion and Order), at 23-24 (emphasis and alteration supplied).

**b.** ***The foregoing portions of this court's prior opinion were not the basis for dismissing plaintiff's claim against Capital One***

Regardless of this court's prior conclusion that the *Rooker-Feldman* doctrine was not a *jurisdictional* barrier to plaintiff's Fair Credit Reporting Act claim against Capital One Bank, this court went on to hold that the claim should be dismissed on separate, *statutory* grounds: *i.e.,* that Capital One was not a "furnisher of information," as required by 15 U.S.C. § 1681s-2(b).

> Despite the foregoing conclusion, Capital One also argues that Troy Williams has not stated a viable claim under 15 U.S.C. § 1681s-2(b), which governs the "[d]uties of furnishers of information upon notice of dispute." 15 U.S.C. § 1681s-2(b) (alteration supplied). The term "furnisher of information" is not explicitly defined by the FCRA, "but 'is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness.'" *Hillerson v. Green Tree Servicing, LLC*, No. 8:14-CV-1038-T-23MAP, 2014 WL 5439593, at *1 n.1 (M.D. Fla. Oct. 24, 2014) (quoting *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1009 n.2 (D. Colo. 2012)).

> Capital One undisputably is plaintiff's creditor, but it nevertheless asserts that it is not a "furnisher of information" within the meaning of the statute, *because it was not the party* who [*sic*] [which] *notified Equifax of the default judgment against plaintiff.* That argument is supported by the statutory language. Section 1681s-2(b) sets forth the duties of a "person" after that "person" receives notice of a dispute "with

regard to the completeness or accuracy of *any information provided by* [*that*] *person* to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1) (alteration supplied).[11] *See also West v. JP Morgan Chase*, No. 3:17-CV-01450, 2017 WL 5624496, at *3 (M.D. Tenn. Nov. 22, 2017) ("Although the statute does not expressly define the term 'furnishers of information,' the statute delineating such furnishers' duties implies that a furnisher of information is any entity that provides information 'relating to a consumer' to any consumer reporting agency.").

According to plaintiff's Equifax credit report, a copy of which was attached to the affidavit he submitted in support of his Second Amended Complaint, *Equifax obtained information about the default judgment* "from local, state and federal courts *through a third party vendor, LexisNexis.*"[12] Because LexisNexis, and not Capital One, provided Equifax with the information about Capital One's judgment against plaintiff, Capital One cannot be considered a "furnisher of information" for the purposes of plaintiff's FCRA claim, and it cannot be held responsible for failure to follow any of the investigatory and reporting procedures set forth in 15 U.S.C. § 1681s-2(b)(1). *Cf. Donohue v. C. Blosenski Disposal Co.*, No. 05-5356, 2006 WL 3423888, at *1 (E.D. Pa. Nov. 28, 2006) (holding that a creditor who provided information regarding a past due debt to a collection agency, instead of a consumer reporting agency, was not a "furnisher of information" under the FCRA).[13]

---

[11] The FCRA defines the term "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

[12] Doc. no. 58 (Plaintiff's Affidavit), at ECF 17 (Equifax credit report) (emphasis supplied). It is appropriate to consider the Equifax credit report, because it was attached to the affidavit plaintiff submitted in support of his Second Amended Complaint and, therefore, the authenticity of the document cannot reasonably be disputed. *See Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (holding that it is appropriate to consider a document attached to a motion to dismiss when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss").

[13] Despite plaintiff's assertion to the contrary, it is irrelevant whether plaintiff has any ability to control the sources from which Equifax obtains its information. *See* doc. no. 72 (Plaintiff's Brief), at 8 (asserting that plaintiff "has no control over what was sent to him by Equifax as it relates to his

Doc. no. 84 (Memorandum Opinion and Order), at 24-26 (emphasis and alterations added to original text).

### 3. The non-binding nature of this court's prior opinion

In any event, this court's previous memorandum opinion, addressing plaintiff's Fair Credit Reporting Act claim against Capital One Bank, does not control the application of the *Rooker-Feldman* doctrine to his claims against Equifax.  As an initial matter, his claim against Capital One was based upon § 1681s-2(b) ("Duties of furnishers of information upon notice of dispute),"[14] which provides that:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall —
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;

---

credit report, nor does plaintiff have control over who Equifax uses as a [*sic*] 'intermediary-[Lexis-Nexis]' to obtain such information reported") (second alteration in original). Because the information did not, in fact, come from Capital One, Capital One is not a "furnisher of information."

[14] The overall title for § 1681s-2 is "Responsibilities of furnishers of information to consumer reporting agencies." 15 U.S.C. § 1681s-2.

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete *or cannot be verified after any reinvestigation* under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly —

(i)      modify that item of information;

(ii)     delete that item of information; or

(iii)    permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1) (emphasis supplied).  That provision applies to "furnishers

of information,"[15] like Capital One Bank, or other entities that provide credit to

consumers, and not to the consumer reporting agencies like Equifax.    That

distinguishes § 1681s-2(b)(1) from the statutory provisions plaintiff relies upon for

his Fair Credit Reporting Act claims against Equifax, because furnishers of

information have the responsibility of providing accurate information to the credit

---

[15] The term "furnisher of information" is not explicitly defined by the FCRA, "but 'is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness.'"  *Hillerson v. Green Tree Servicing, LLC*, No. 8:14-CV-1038-T-23MAP, 2014 WL 5439593, at *1 n.1 (M.D. Fla. Oct. 24, 2014) (quoting *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1009 n.2 (D. Colo. 2012)).

reporting agencies, not of including accurate information on the consumer's credit report. Moreover, the duty of a furnisher of information to modify, delete, or block the reporting of information applies not only when the information is *inaccurate* or *incomplete*, but also when the information *cannot be verified.* Thus, inaccuracy is not an essential element of a claim under § 1681s-2(b)(1) like it is under § 1681e(b) and § 1681i(a)(1), and plaintiff's § 1681s-2(b)(1) claim against Capital One would not *necessarily* have required a finding that the underlying judgment was incorrect.

Additionally, on January 8, 2018, the date on which this court entered the memorandum opinion and order dismissing plaintiff's claim against Capital One, there was no clear binding authority addressing the question of whether inaccuracy was an essential element of a claim under § 1681s-2(b)(1). Now, however, that question is pending before the Eleventh Circuit Court of Appeals.

The United States District Court for the Southern District of Florida decided *Hunt v. JPMorgan Chase Bank, National Association*, on February 26, 2018, approximately a month and a half after this court's prior opinion. In that case, Hunt alleged that JPMorgan Chase Bank "violated [§ 1681s-2(b)(1) of] the FCRA due to its negligent and/or willful failure to investigate the disputes Plaintiff submitted to the [credit reporting agencies] regarding the accuracy of the account information furnished by Defendant, and by Defendant's continued furnishing of allegedly

27

inaccurate information." *Hunt v. JPMorgan Chase Bank, National Association,* No. 17-CV-62094-BB, 2018 WL 1183357, at *3 (S.D. Fla. Feb. 26, 2018) (alterations supplied). The bank moved to dismiss Hunt's complaint because there was no allegation of any factual inaccuracies, and the court stated:

> "Construed literally, the text of the FCRA would seem to impose liability — regardless of the accuracy of the underlying information — if the furnisher did not conduct a proper investigation after receiving notice of a dispute." *Davidson v. Capital One*, No. 14-20478-CIV, 2014 WL 6682532, at *4 (S.D. Fla. Nov. 25, 2014). However, "to interpret the FCRA to create liability for the failure to conduct a reasonable investigation when the disputed information" is not inaccurate or misleading "would do violence to the primary goal of the FCRA: to promote the accurate reporting of credit information to CRAs." *Id*.; *see also Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 149 (4th Cir. 2008) ("Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression."); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010) ("The FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information.") (emphasis in original).

> "As legislation should not be interpreted in a way 'actually inconsistent with the policies underlying the statute,' courts appear to agree an FCRA plaintiff must prove the challenged information is inaccurate." *Davidson*, 2014 WL 6682532, at *4 (quoting *Bailey v. USX Corp.*, 850 F.2d 1506, 1509 (11th Cir. 1988)); *see also Chiang*, 595 F.3d at 38 (requiring "a showing of actual inaccuracy in suits against furnishers"). Finally, the Court "emphasize[s] that, just as in suits against CRAs, a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions. Like CRAs, furnishers are 'neither qualified nor obligated to resolve matters that 'turn[ ] on questions that can only be resolved by a court of law.'" *Chiang*, 595 F.3d at 38 (internal citation omitted) (emphasis in original).

*Hunt*, 2018 WL 1183357, at *3-4 (alterations and emphasis in original).  Because there was no allegation that inaccurate information had been reported, the district court in *Hunt* dismissed the § 1681s-2(b)(1) claim.

Hunt appealed the Southern District of Florida's decision, and the case has not yet been decided by the Eleventh Circuit.  A review of the appellate briefs filed by both parties to that appeal indicates that the necessity of proving the reporting of inaccurate information is a central issue on appeal.[16]  If the Eleventh Circuit decides that reporting inaccurate information *is* required for a § 1681s-2(b)(1) claim, it will turn out that this court's January 8, 2018 decision that the *Rooker-Feldman* decision did not bar plaintiff's claim against Capital One was wrongly decided, and that the claim against Capital One should have been dismissed on jurisdictional grounds.  If that ultimately is the Circuit's ruling, then this court's January 8, 2018 memorandum opinion and order (doc. no. 84) would amount to, at most, harmless error, because the claim against Capital One was dismissed on other, statutory grounds.

In sum, plaintiff's sole basis for arguing that the *Rooker-Feldman* doctrine does not bar his claims against Equifax under 15 U.S.C. § 1681e(b) and § 1681i(a)(1) —

---

[16] *See* Corrected Principal Brief of Appellant Mark Donald Hunt at 29-35, *Hunt v. JPMorgan Chase Bank, National Association*, No. 18-11306-JJ (11th Cir. May 10, 2018); Brief of Appellee JPMorgan Chase Bank, N.A. at 8-15, *Hunt v. JPMorgan Chase Bank, National Association*, No. 18-11306-JJ (11th Cir. July 24, 2018); Reply Brief of Appellant Mark Donald Hunt at 3-11, *Hunt v. JPMorgan Chase Bank, National Association*, No. 18-11306-JJ (11th Cir. Aug. 7, 2018).

29

that this court previously decided that *Rooker-Feldman* did not apply — is not valid.

Regardless of the outcome of plaintiff's claim against Capital One, he cannot succeed against Equifax without demonstrating that the state court wrongly decided the default judgment.  The *Rooker-Feldman* doctrine bars any such claim.

For all of the stated reasons, summary judgment is due to be granted in favor of Equifax on plaintiff's Fair Credit Reporting Act claim.

## C.      The Preemption of Plaintiff's State Law Claims

The Fair Credit Reporting Act provides, in part, that:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of *defamation*, *invasion of privacy*, or *negligence* with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis supplied).  Based upon that statutory provision, plaintiff's state law claim for invasion of privacy and his claim for negligent, wanton, and/or intentional hiring and supervision (Counts II and III) are pre-empted and cannot proceed.

Plaintiff's Count III also contains some allegations of wanton and/or

30

intentional conduct:  *i.e.*,

> 94.  Equifax agents or employees are allowed and encouraged to break the law.

> 95.  Equifax is aware of the "wrongful conduct" of its employees or agents.

> 96.  Equifax negligently[,] wantonly[,] and/or *intentionally* hired, retained or supervised incompetent employees or agents, who were allowed or encouraged to violate the law *willfully and maliciously*, *with the intent to harm Plaintiff*, and Defendant is thereby "responsible" to the Plaintiff for the wrongs committed against Plaintiff, and the damages suffered by Plaintiff.

Doc. no. 56 (Second Amended Complaint), ¶¶ 94-96 (alterations and emphasis

supplied).  Liberally construed in plaintiff's favor, those claims are not pre-empted.

Plaintiff's untitled state law claim (Count IV) alleges that:

> 98.    Defendant Equifax has violated Alabama State Law by publishing false and/or inaccurate information concerning Plaintiff.

> 99.    Defendant, Equifax[,] *intentionally* "published" false and defamatory information related to the Defendant Capital One's account *in a willful and malicious manner with the intent to harm consumer*.

> 100.   Defendant, Equifax[,] acted with *willfulness*, negligence, *malice*, wantonness, recklessness, carelessness, and/or *intentional* "conduct" in their dealings with and about Plaintiff Williams with the intent to harm as set forth in this Complaint.  This includes the initial reporting of Defendant Capital One account [*sic*]; the handling of any investigations on the account; and all other aspects as set forth in this Complaint.

> 101.   It was foreseeable, and Equifax did in fact forsee [*sic*] it,

that refusing to properly update and investigate would cause the exact
type of harm suffered by the Plaintiff Williams.

Doc. no. 57 (Second Amended Complaint), at 25 (alterations and emphasis supplied).

To the extent that Count IV asserts defamation, it is pre-empted by the FCRA.

To the extent it asserts malice or willful intent to injure, it is not pre-empted. *See* 15

U.S.C. § 1681h(e).

Even though plaintiff's claims for malice and willful intent to injure with

regard to defendant's hiring practices and processing of plaintiff's credit file are not

pre-empted, they still cannot succeed. Plaintiff has presented no *evidence* of

malicious or willful acts undertaken with the intent to cause him injury. Accordingly,

summary judgment is due to be granted on plaintiff's state law claims.

## IV.  CONCLUSION

For all of the reasons discussed, this court concludes that plaintiff's motion for

summary judgment should be denied, and defendant's motion for summary judgment

granted. An appropriate Judgment will be entered contemporaneously herewith.

**DONE** this 20th day of September, 2018.

_____
United States District Judge

32